## No. 11,652.

### LEON LAVEDAN VS. MISS IDA JENKINS.

Donations between the spouses are revocable; the revocation may be tacit; is accomplished by the mortgage, donation, sale and other act of the donor evincing the intention to revoke, and the revocation and subsequent disposition of the property may be by the same act. Civil Code, Art. 1749; Napoleon Code, Art 1096; Laurent XV, par. 331, 332; 4 Boilleux, 280.

The sale by the wife of the property donated by the husband, made with his authorization through an agent with power to consent to and authorize the sale; the power describing the property as standing in his wife's name, is in legal effect the same as if made by the husband, he having the power to revoke the donation and sell; and treating the property in the act as that of the wife, is a mere form not detracting from the effect of the act as a sale by the husband, being both a revocation and a sale by him.

Nor could the husband, consenting to the sale and thus inviting the payment of th ꞉ price, afterward claim the property on the ground the donation was not canceled by the sale, was still subject to revocation reinstating the ownership of the husband; such pretension by him would be deemed an attempted fraud on the purchaser, and the sale would be maintained as conveying full title to the purchaser. Bigelow on Estoppel, 541.

Lavedan vs. Jenkins.

While the heirs may sue to reduce donations by the father in excess of the dispos-
able portion, they can not attack a *bona fide* sale made by him; and that sale
canceling any previous donation, there is no basis for the action to reduce.
Civil Code, Art. 1502; 6 Martin, 529; Rachal vs. Rachal, 44 An. 501.

. When the donation is revoked, the ownership of the donor is reinstated, the same
as if there had been no donation. Civil Code, Art. 1749; Scudder vs. Howe, 44
An. 1204; Abes vs. Davis, 46 An. 819.

*Benjamin Ory* for Plaintiff, Appellee:

All donations made between married persons, during the marriage,
though termed *inter vivos*, shall always be revocable. Civil
Code, 1749.

The sale of property by the husband revokes the donation thereof
made by him to his wife, during marriage, by donation *inter
vivos*. Pothier on Donations, Testamentary Chapter 6, p. 310;
Grenier, Vol. 3, No. 345; Demolombe, Vol. 23, No. 480; Aubry
and Rau, Vol. 8, p. 114, par. 744; Laurent, Vol. 15, No. 332;
Troplong, Donations et Testaments, Vol. 4, p. 855, No. 2667.

A conveyance of the right, title and interest of the vendor in the
thing is a conveyance of the thing itself. Durell vs. N. O., 13
An. 335; Davis vs. Carroll, 11 An. 705.

It can be revoked even after the death of the donee. Journal du
Palais, 1842, Vol. 1, p. 637.

The revocation of a donation results by implication from the act by
which the donor ratifies and confirms the sale which a third
person has made of the property donated. Boschat vs. Gaascht,
Journal du Palais of 1812, p. 119.

Plaintiff, revoking the donation which he made to his wife of a cer-
tain piece of property, seeks to recover possession of said prop-
erty from defendant, whose title is derived from plaintiff's wife
under the donation aforesaid.

It appears that Mrs. Wade desired to donate the property in ques-
tion, thus donated by her, to her daughter, Mrs. Eames, "as an
extra portion over and above her legitimate share in the suc-
cession of the donor," estimating it at $7000, and to secure the
title it was specially stipulated in the act "that said donor binds
herself and her heirs to warrant and forever defend the said
property against all lawful claims and demands whatsoever."
To this act the plaintiff was a party, approving of it and author-
izing his wife. He is therefore estopped from disputing the title
of defendant.

Besides the prescription of ten years invoked by defendant is a complete bar to the action.   Wade vs. Eames, 26 An. 449.

If a man knowingly, though passively, by looking on, suffer another to purchase land for valuable consideration, under an erroneous impression of title, without making known his claim, he will not be permitted thereafter to exercise his legal right against such person.   Bigelow on Estoppel, 586; 96 U. S. 720.

When the owner of an immovable is present at a public sale of the same and tacitly assents to its being sold as the property of another, he is thereby estopped from subsequently disputing the title and possession of the *bona fide* purchaser.   Lippmins vs. McCranie, 30 An. 1251; Alexander vs. Bourdier, 43 An. 321; Marsh vs. Smith, 5 R. 518; Moss vs. McCall, 13 An. 217.

The heir is bound by his ancestor's warranty and estoppel.   Smith vs. Elliott, 9 R. 3; Blanchard vs. Allain, 5 An. 368; Armorer vs. Case, 9 An. 242; Stokes vs. Shackelford, 12 La. 170; Jenkins vs. Collard, 145 U. S. 546.

---

*Hugh C. Cage* for Defendant, Appellant:

Donations between married persons, during marriage, always revocable.   C. C. 1749; C. C. 1516; C. N. 1096.

Any disposal of property, whether *inter vivos* or *mortis causa*, exceeding the *quantum* of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that *quantum*.   C. C. 1502.

Where a husband makes a transfer to his wife without any valid consideration, and such transfer exceeds the disposable portion of his estate, his forced heirs, after his death, may by suit demand that the transfer be annulled in excess of the disposable portion, even though the property has passed into the hands of third persons, and it can be brought back into the succession of the transferror or donor, free from all charges created by the transferee or donee.   38 An. 813; 41 An. 474; 44 An. 1109.

A person who has agreed to purchase from a third possessor property which has been thus donated, while the donee is yet living and having legitimate descendants and presumptive forced heirs, would be liable to eviction by the latter at the death of the donor under the conditions stated and can not be compelled to accept so perilous a title.   41 An. 474.

Where the donee has afterward sold the property donated, to a third person, and the donor has intervened in the act of sale ratifying it, and expressly promising for himself and his heirs to warrant the purchaser against eviction, such purchaser could not oppose even this express warranty to the forced heirs in their suit for reduction. Cass. Journal du Palais 1868, p. 934.

One can not renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question. C. C. 1887; C. N. 1130; 3 R. 99; 12 An. 436.

The approval or confirmation during the life of the donor, by his children, of the acts which work prejudice to them, is no estoppel to a suit in reduction brought by them after the death of the father. Toullier, Vol. 5, No. 163; Troplong, Vol. 2, No. 938; Demalombe, T. 19, No. 229; Laurent, T. 12, No. 163; Aubry and Rau, Vol. 7, No. 229, Sec. 586.

There was no attempt made to revoke the donation; it remained one of the deeds in the line of titles, not revoked, but confirmed by subsequent proceedings. 44 An. 1109.

In the deed of May 19, 1893, Edward Owen did not revoke the donation to his wife. On the contrary, he ratified and confirmed it.

The law which makes donations between spouses during marriage always and essentially revocable is a law made for the preservation of public order and good morals, and is in the interest of public policy. Mourlon, Rep. Ecrites, Vol. 2, p. 519, Sec. 1001.

Individuals can not by their conventions derogate from the force of laws made for the preservation of public order or good morals. C. C., Art. 11.

Therefore, if Edward Owen intended by the deed of May 19, 1893, to derogate from or renounce his right to revoke his donation to his wife, his act was null and void, and the right still exists in him in full force and effect.

If, thereby, he intended to transfer this right to plaintiff, his act was null and void, for the right is inalienable and personal to him, and can not be transferred by him and can not be exercised by his creditors or any third person. Mourlon, Rep. Ecrites, Vol. 2, p. 321, Sec. 1005.

Argued and submitted March 26, 1895.
Decided April 8, 1895.

The opinion of the court was delivered by

MILLER, J.   This suit is brought by plaintiff to compel compliance with an agreement of defendant to purchase property. The defence is plaintiff has no title to the property he tenders defendant. From a judgment against defendant she appeals. In 1867 Edward Owen made a donation *inter vivos* of this property to his wife. With the authorization of her husband, the donor, the wife sold it. From her vendee by successive conveyances the property was acquired by plaintiff, and by him agreed to be sold to defendant binding herself for the payment of the price. The objection to the title urged by defendant is, that the donation subject to revocation by the terms of the Code is still liable to be revoked by Owen, the donor, yet living, or subjected to reduction if in excess of the disposable portion by his heirs. The defence supposes the concurrence of Owen, the donor, in the sale made by his wife, and his joining in that sale is no impediment to a recovery by him or his heirs hereafter from those who bought the property and paid the price on the faith of that sale.

Under our law donations between the spouses are revocable, and if not revoked, are subject to reduction, if at the donor's death they are found to be in excess of the disposable portion. Hence, if the title to the property involved in this controversy depended simply and only on the donation by Owen to his wife, the defendant would have the basis to refuse payment of the price stipulated for a good title; Civil Code, Arts. 1749, 1750, 1502. But if this donation has been revoked and defendant's title is based on a sale in legal effect by the donor, the objection fails. Under the Code there is no form prescribed for the revocation of a donation. The jurisprudence under the Napoleon Code, containing the same article on the subject of the revocability of donations is: that the revocation may be deduced from the act of the donor manifesting the intention. The revocation may be tacit: " *Quand a la revocation tacite elle est susceptible de se manifester par toute act manifestant l'intention du testateur de revenir sur ce qui avant faite en faveur de son conjoint.*" Napoleon Code, Art. 1096; Laurent 15, par. 331, 332; 4 Boilleux,

p. 280; Code Civil Annoté, Fuzier Herman 2, p. 940, Nos. 35, 39. Thus a subsequent donation, mortgage, sale or other act of the donor inconsistent with the donation, annuls it. The revocation and subsequent disposition by the donor may be by the same act. If the donor sells, the sale itself is a revocation of the thing previously donated. Our Code has recognized the tacit revocation presented by the commentators on the Napoleon Code. Succession of Hale, 26 An. 260.

It is claimed here that no revocation of the donation of Owen to his wife can be deduced from his joining her in the act of sale to the author of defendant's title. It is urged that sale was of her property, hence conveyed only the property subject to his right of revocation, and the action of reduction of the forced heirs. As to him it will hardly be contended he could join his wife in selling and obtaining the money of a purchaser and then wrest from him the property on the ground the wife had no title to convey, or rather a title the husband could destroy at his pleasure. The sale by the wife was under the authority of the husband to his agent, " to consent to and authorize in the husband's name his wife to sell the property recorded in her name." The agent intervenes in the act, the sale is made, and the purchaser pays the price with the confidence he gets a perfect title. The acts and conduct of a man on which another has acted in acquiring or parting with property are to be interpreted, and bind according to their natural import. It is obvious the purchaser in this case paid his money on the implicit faith he was getting a full title for all time to the property; that was the faith authorized and invited by the husband and by that he is bound. We can conceive of no clearer case of an estoppel than that which is opposed to any claim of the husband to this property.

If the husband, with full power to revoke the donation and sell the property free from any claim of the heirs, has concurred in a sale which he is estopped from disputing, will not that sale be held equally conclusive on his heirs? Will they be admitted to urge that the sale was only of the wife's interest, that is, passed a title the husband could destroy at the moment after the purchaser paid his money, or at any time; and, of course, a title which no sane man would buy for a full price, or indeed at any price. If Owen, the father, could not in this case with one hand authorize the sale and thus invite the purchaser to pay his money and with the other pos-

sess himself of the property, on the ground that the sale passed to the purchaser but the shadow of a title, it is not easy to see that the heir could set up a pretension that would be viewed as an attempted fraud on the purchaser if advanced by the father.    Aside from this aspect of the case, it must be borne in mind that Owen had the right to sell free from any claim of the heirs.    At any moment he could revoke the donation, and a sale by him was a revocation.    It was not necessary to introduce his wife in the act of sale.    Hers was but a nominal ownership; that is, susceptible of termination at the husband's pleasure.    In his power to the agent to concur in and consent to the sale the property is described as that standing in his wife's name.    The language is that appropriate to a mere paper title.    In this view we have the case of a man with power to sell free from any claim of the wife or her heirs, authorizing that sale by his wife, and by his agent concurring in that sale. It certainly seems difficult to distinguish between a sale made by Owen himself and that to which he consents, made by his wife, of property which he had the right to sell and his wife could not sell without his participation.    Ordinarily, any assent by the owner to the sale by another of his property, as, for instance, if the owner signs the act as a witness, protects the purchaser against any claim by the owner.    In this view the authorization by Owen to that sale is the same as if he sold himself, and his sale, it must be conceded, would be a complete effacement of the previous donation to his wife, and of all claims she or her heirs could rest on it.    It is urged we can not hold this sale to be made by Owen, because made in the wife's name by his authority.    That is the form of the act.    That form is consistent with the purpose of Owen to sell and of the purchaser to buy the property as that of Owen.    He had the right to sell.    But as his wife stood on the records as owner, it was deemed proper to have her sell with his consent.    It is as certain as any conclusion can be predicted on human conduct that Owen designed to sell and the purchaser designed to buy the property in the usual sense; that is, not property that Owen could take back in the same breath that he consented to the sale.    We think the act carried out that intent, and to hold otherwise would be to make mere form subserve a purpose never intended, and the opposite to the actual intentions of the parties.    We view the act as in legal effect a sale by Owen, and upheld besides as such by an estoppel

which binds him and his heirs. In our conclusion we threw out of view the paper executed by Owen and his child affirming the sale. It denotes his appreciation of the force which, in our view, attaches to the sale itself.

The heirs are creditors of the ancestors in a certain sense for their *legitime.* Civil Code, Art. 1502; Croizet's Heirs vs. Gaudet, 6 Martin, 529; Rachal vs. Rachal, 4 An. 501. As such they can attack any donation of their father in excess of their disposable portion. They can not contest sales made by their ancestor. Owen had a perfect right to sell without invading their rights. To suppose they can question the sale of the property, made in this case with the authority of the father, is, in our view, to disregard the purpose and effect of the act, and any such pretensions on their part could succeed on the theory only that their father had perpetrated a fraud and they can profit by it.

It has been the subject of some discussion whether, when the donation is subjected to the legal or conventional return, the property became that of the donor, freed from the action of the heirs to reduce donations. Our courts have held the return effaced the donation, and hence the heirs would have no action to reduce in respect to the property. Civil Code, Art. 1559, par. 4; Scudder vs. Howe, 44 An. 1103. There can be no question the revocation of the donation by one to the other spouse brought the property back to the donor the same as he had made no donation. In this case the revocation and sale by the donor was by the same act. Civil Code, 1749; Abes vs. Davis, 46 An. 819.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.

### DISSENTING OPINION.

WATKINS, J. Edward Owen conveyed the property in controversy to his wife, Hattie Bryan Owen, by a donation *inter vivos* in due form, on the 3d of December, 1876, and she conveyed same to W. M. Owen, by an authentic title in due form, on the 7th of July, 1870. At a public sale made in the bankruptcy proceedings of W. M. Owen this property was adjudicated to C. E. Alter, and this adjudication was evidenced by an authentic act, bearing date 7th of June, 1873, and he conveyed same to the present plaintiff on May 5, 1893.

On the 11th of August, 1894, plaintiff entered into an agreement with the defendant to sell her the property at the price of three thousand three hundred and fifty dollars, and the latter having declined to accept the title tendered her, this suit was brought to compel a specific performance.

The decision of the question as to the validity turns upon the title Mrs. Hattie Bryan Owen made to W. M. Owen in 1870—the defendant's contention being that as it depended upon the donation previously made to her by her husband it was necessarily subject to the claim of the forced heirs of the donor, Edward Owen.

In my opinion the defendant's contention is correct and her objection well grounded in law, and that it is supported by the following authorities: R. C. C. 1502, 1504, 1505, 1510; Fossier vs. Herries, 1 La. 506; Carroll vs. Cockerham, 38 An. 813; Succession of Moore, 40 An. 531; Tessier vs. Roussel, 41 An. 474.

All donations *inter vivos* between married persons are revocable during the marriage. R. C. C. 1749.

The contention on the part of the plaintiff is that the act of the husband in appearing and joining his wife in the conveyance, though that act was only for the purpose of authorizing her to make the contract, operated as a revocation of his prior donation to his wife, and impressed upon the act of sale to W. M. Owen the character of a conveyance from the husband, Edward Owen, and divested it of its character as the sale of separate property of the wife. And, founded on this theory, the argument is that the property passed by the act was thereby disembarrassed by the future claim of the husband's forced heirs for their *legitime*.

In my view the law is just the other way.

If this contention be a proper interpretation to be placed upon the act of the husband, in simply authorizing his wife to sign an act of sale of her separate property, what is to be the fate of a married woman's separate and paraphernal estate?

Being under coverture she can not alienate same without the authorization of her husband or the judge; and if the husband joins in the act to authorize her to sell, it is divested of its separate and paraphernal character; and if the husband's consent is not first sought and refused, the judge is not empowered to act.

For the Code declares that "the wife, even when separate in estate from her husband, can not alienate, grant, mortgage, or acquire,

either by gratuitous or encumbered title, unless her husband concurs in the act, or yield his consent in writing." R. C. C. 122.

And it further provides that "if the husband refuses to empower his wife to contract, the judge *may* authorize her to make such contract," etc. R. C. C. 125.

In my view, it can be affirmed with as much reason that the effect of a husband's authorization would be just the same in case of a sale by the wife of *any* separate property of hers, as in the instant case.

And the Code declares in terms that "separate property is that which either party * * * acquires during the marriage by inheritance or by donation made to him or her particularly." R. C. C. 2334.

Against such a title the law does not even raise a presumption of it being community; for that presumption is alone raised against the estates which either of the spouses acquire during the marriage "by donation made jointly to them both during the marriage," etc. R. C. C. 2402.

To my mind the proposition that the title Mrs. Owens, the wife, conveyed was that of her separate estate is too obvious for serious discussion.

I can well understand that if she had made an actual restoration of the property to her husband, and he had sold or hypothecated it; or had she permitted him to openly, publicly and notoriously use and treat it as his own, with her knowledge or concurrence, the donation would have been of no avail.

This is the purport of the decision in the succession of Hale, 26 An. 195.

In this case there is no act of the wife pointed out as indicative of her intention to make a restoration of the property to her husband; on the contrary, that it was her clearly expressed intention to sell the property to W. M. Owen for a stipulated price, which was paid to her.

In that act, the husband concurred, and it is to that act which he gave his sanction.

In my opinion the property was sold and the title accepted as the separate property of the wife; and in the hands of the plaintiff it is subject to the *legitime* of the forced heirs of the donor.

For these reasons I dissent.

The Chief Justice concurs in this opinion.