Statement of the Case.
NICHOLLS, J.
The plaintiff, Mrs. Hattie D. Griffith, represented that she was the owner and entitled to the possession of an undivided two-thirds interest in certain property which she described in her petition.
That her father, John B. Durham, was in 1868 the owner of one-half of the block as described. That in said year he donated said half block to Mrs. Eliza Durham. That her father married after making said donation, and that he had three children. That these three children were all living at the time of Durham’s death in 1883, and that any donations made by said Durham, whether inter vivos or mortis causa, exceeding one-third of his estate at the time of his death, taking into consideration the value of the donated property, were excessive, and that the children were entitled.to have same reduced to the one-third allowed by law.
That this was the only donation ever made by the said Durham, and that said Durham died insolvent, leaving this donated property as the sole item to be taken into consideration in estimating the legitime of his children. That her brother, Howell Durham, died in 1894, leaving her as his sole heir; and that she also inherited all the property of her sister, Carrie Durham, who died in childhood; and that she was therefore entitled to have said donation reduced so as to give her two-thirds thereof. That the two-thirds of said lot were well worth more than $2,000.
That the above-described property was purchased by F. J. Alcocke in 1886, as appeared from deed recorded in Conveyance Book 2, p. 116, hereto annexed and made part hereof. She further declared that the said Alcocke died in 1886, leaving as his heirs Mrs. Wealthy B. Alcocke and Misses Mabel Alcocke, now wife of W. D. Norwood, of Caddo parish, Julia Alcocke, and Fayette .Alcocke, who were now in possession of said land as owners. That the two last named were minors, represented by their mother as natural tutrix. That at the time of said donation there were improvements of this property, to wit, a dwelling house. That said house was lately destroyed by fire, and that insurance was collected thereon in the sum of $1,200 by the above-named possessors thereof, and that petitioner was entitled to two-thirds thereof, said insurance standing in place of the house itself. Petitioner further declared that the original donee, Mrs. Eliza Durham, died in this parish insolvent, and that all her property was sold to satisfy her debts.
In view of the premises, she prayed that the defendant Mrs. Wealthy B. Alcocke individually, and as tutrix of the minors Julia and Fayette Alcocke, and Mrs. Mabel Alcocke Norwood and her husband, be cited, and that she have judgment against said defendants, decreeing the reduction of said donation to one-third thereof, and further decreeing her the owner of an undivided two-thirds interest in and to said described property, free from all debts and incumbrances, and for further judgment in her favor and against the defendants for the sum of eight hundred dollars, two-thirds of the insurance collected on the house destroyed by fire, and further for $20 per month rent from judicial demand.
Defendants answered, pleading first the general issue. Further answering, they admitted their possession of the property, but denied that plaintiff had any right, title, or interest thereto. They alleged that said property was sold under an order of seizure and sale in the suit of S. F. Gordon against *517 Mrs. Eliza Durham, No. 1,479 on the docket of said honorable court, under a special mortgage executed ,by Mrs. Eliza Durham and her son, plaintiff’s father, John B. Durham, as would fully appear by reference to said suit and mortgage, to which special reference was hereby made, and the same, with the note signed by John B. Durham, was made part hereof. She showed that said mortgage, while ostensibly executed for the benefit of Mrs. Eliza Durham, was in fact and in truth executed by and for the benefit of said John B. Durham, who received the proceeds thereof, and same constituted in law a conventional return of said property to the same alleged donor. That at said sale of said property the'same was purchased by F. J. Alcoeke, who likewise held a mortgage thereon, which last-named mortgage was by and for the benefit of the said John B. Durham, who concurred therein and received the proceeds thereof, as would more fully appear on the trial hereof, and the said father of said plaintiff having received the proceeds of said mortgages under which said property was sold, and having consented thereto, and concerned therein, and having been the sole beneficiary thereof, he and she were estopped and debarred from claiming said property. That such mortgages and sale completely divested any interest that plaintiff’s father had in or to said property. That while said property stood in the name of Mrs. Eliza Durham on the record of said parish, same was treated by her and her said son, and was used by him, as his property, and was so placed in the name of vhis said mother for the purpose of placing it beyond the reach of his creditors.
Further answering, she pleaded the prescription of 5 and 10 years in bar of plaintiff’s right to recover, same having been in defendants’ and their authors’ possession, in good faith, by a just title for more than 10 years.
In any event, defendants showed that at the death of Mrs. Eliza Durham, the so-called donee of said property, the said plaintiff, with her coheirs, accepted the succession of said Mrs. Durham situated in this parish, and in the county of Williamson, state of Texas, and received the proceeds of the sale of' the property, and the said Mrs. Durham, being a warrantor in the deed under which defendants held said property, cannot now disturb defendants in the possession thereof, and were estopped and debarred, because' of said warranty, from contesting defendants’ right to said property.
Iñ the event of their eviction from said property, then defendants showed that they had paid the state and parish and city taxes on said property for the past 18 years, two-thirds of which would amount to not less than $100 per annum, besides other charges, an itemized list of which was hereto annexed, for which they should be paid by said plaintiff in the event of their eviction.
They prayed that' plaintiff’s ■ demand be rejected, but, in the event of eviction from said property, they prayed for judgment in reconvention in the sum shown on the list annexed for'taxes, etc., and for all general relief orders and decrees.
The district court, in rendering judgment, used the following language:
“The first question to be considered is that of conventional return. The evidence shows the following facts, viz.: John B. Durham, the donor, was indebted unto J. D. Cawthon in the sum of $1,873.46. Mrs. Eliza Durham, the donee, in January, 1882, by authentic act, acknowledged her indebtedness to said Oawthon in said sum, giving her two notes payable to his order, which said notes were also signed by John B. Durham to secure the -payment of said notes.. John B. Durham signed the act as one of the attesting witnesses. These two promissory notes were transferred by J. D, Cawthon to S. F. Gordon. The first maturing note seems to have been paid. In January, 1884, Gordon foreclosed on the second note f,or $943, with interest, attorney fees, and costs, and the property was adjudicated to F. J. Alcocke at the price of $1,800.
“Hence there can be no question that the donee specially mortgaged the property donated to a creditor of the donor, whose assignee received the proceeds of the sale.
*519 “But this is no ‘conventional return,’ as prescribed in Civ. Code, ait. 1559, which ‘refers to a stipulation embodied in the donation itself.’ Tessier v. Roussel, 41 La. Ann. 479, 6 South. 542, 824. In that case the donee mortgaged the property to the donor, who foreclosed the mortgage and acquired the ownership. The court held that the taking of the mortgage ‘was not a dissolution but an affirmance of the donation.’ Tessier v. Roussel was affirmed by Scudder v. Howe, 44 La. Ann. 1109, 11 South. 824, which, however, was a ease where the donation had been revoked by consent, and the property formally reconveyed by the donor to the donee. The Scudder Case simply holds that there may be a conventional rescission of a donation inter vivos — a point which was not passed on in 41 La. Ann. 479, 6 South. 542, 824. In the case of Lavedan v. Jenkins, 47 La. Ann. 725, 17 South. 256, the donation was propter nuptias, and revocable by the husband, while a donation inter vivos between persons other than spouses is irrevocable, with the few exceptions set forth in Civ. Code, art. 1559. The Scudder Case holds that there may be a conventional rescission by formal sale or donation; or other conveyance of title.
“The court holds that this defense of ‘conventional return’ or ‘tacit revocation’ cannot be sustained in the case at bar.”
The lower court—
“Ordered, adjudged, and decreed that the plaintiff, Mrs. Hattie Durham Griffith, be recognized as the owner of an undivided eleven-eighteenths (n/is) interest in the northwest half of block 4 of the John N. Howell subdivision, as described in Book Q, p. 22, of the records of Caddo parish, La., together with a like interest in all the buildings and improvements thereon; and it is further ordered and decreed that said plaintiff do have and recover of the defendants herein rents at the rate of $17 per month from judicial demand, to wit, from June 19, 1902, until this date, and all costs of suit.
“It is further ordered and decreed that the defendants do have and recover of said plaintiff the sum of six hundred and sixty-eight and iS/ioo dollars, the amount received by her as beneficiary heir of the succession of Mrs. Eliza Durham, and the further sum of eleven-eighteenths of three hundred dollars for useful improvements, and that the question of taxes since the institution of this suit be rejected.
“It is further ordered and decreed that the right of plaintiff to demand possession of said interest in said property be suspended, and that defendants be maintained in possession of the whole of Said property until the judgment herein rendered in their - favor be fully paid and satisfied; and it is further ordered and decreed that, if the balance due on this judgment to defendants be not paid within thirty days from this date, they have leave to issue execution according to law.”
Defendants appealed.
Opinion.
The evidence shows that on May 25, 1868, John B. Durham executed in favor of his mother, Mrs. Eliza Durham, an act in the form of a donation inter vivos of the property in litigation in this suit. John B. Durham had not up to that time ever been married, and his mother was then his presumptive heir. He afterwards married and had children. After the act of donation was executed, the son became indebted to J. D. Cawthon, sheriff of the parish, who obtained a judgment against him on the 9th of December, 1881, for $1,030.80, in the suit of Cawthon against Durham. In settlement pf this judgment, Mrs. Eliza Durham and John B. Durham signed, in 1882, a joint and several note in favor of Cawthon, and Mrs. Eliza Durham on the same day secured the paj'ment of the note by special mortgage on the property which had been transferred to her in the act of donation, and which then stood upon the records in her name. John B. Durham signed the act of mortgage as a witness.
On the 4th of January, 1884, Mrs. Eliza Durham executed in favor of F. I. Alcocke a promissory note for $2,250, and secured payment of the same by special mortgage on this same property, then standing in her name. John B. Durham signed the act of mortgage as a witness, and indorsed the note. The note due to Cawthon was transferred to S. F. Gordon, who foreclosed upon the mortgage debt, and the property was adjudicated on the 16th of February, 18S4, to Alcocke for $1,800. One thousand and one dollars of this price was paid to the seizing creditor, Gordon, and $671 was applied by the purchaser to the partial payment of his own mortgage claim. At the time of this foreclosure sale John B. Durham was dead, he having died on the 7th of July, 1883. The debt due to Cawthon and afterwards transferred to Gordon, and that due to AlCocke, *521 were debts of John B. Durham, though his mother by her actions became subsequently additionally bound for the same.
E. B. Herndon, an attorney at law, testified that he was present at the execution of the Alcocke mortgage, and acted as the latter’s attorney in accepting the same. The mortgage was executed for the benefit of John B. Durham — he was present at the time and indorsed the note, he thought. The object of having him sign the mortgage was to have him present consenting to the signing of the mortgage, so that he could not come in and plead donation afterwards. It was simply to show that he was cognizant of the fact.
T. Alexander, an attorney at law, testified that—
“He was present and accepted for Oawthon the mortgage executed in favor of Oawthon. The act of mortgage was signed by Mrs. Durham, and it was indorsed by John B. Durham. The note given was a joint and several note signed by both Mrs. Durham and John B. Durham. The indebtedness for which the note and mortgage were executed was an indebtedness of John B. Durham. John B. Durham proposed to secure the indebtedness by a mortgage on that property. Witness, as attorney for Oawthon, found that the property was in the name of his mother, and as the indebtedness was that of the son, and not the mother, he (witness), for greater precaution, had him sign the note and also the mortgage. In other words, the mother gave the mortgage to secure the debt of John B. Durham to Oawthon. Durham may have told witness that the property was in his mother’s name before he examined the record. At any event, the intention must have been to strengthen the matter by Durham’s signature. He was at that time practically in insolvent circumstances, and it may be that witness had in view at that time that he had creditors who at some future time might come up and claim that it was Durham’s property and not his mother’s, and witness wanted to hedge it as best he could.”
The plaintiff’s demand was for an undivided interest as owner in the property itself, and for the revenues as owner upon that undivided interest since the date of her father’s death. Judgment was rendered in her favor declaring her to be the owner of an undivided interest therein, with a right to the revenues on that interest. The judgment, in our opinion, cannot be sustained.
It is very true that, at the time of the mortgages executed in favor of Oawthon and Alcocke, the legal title stood in the name of Mrs. Eliza Durham. Whether the parties to the act of donation intended thereby to transfer at all, in point of fact and actually, the ownership of the property either by donation or otherwise, or whether the legal title had been simply transferred, as is frequently done, for the sake of convenience, or in order to screen it from the pursuit of creditors, we do not know. The attorneys of Gawthon and of Alcocke evidently had doubts upon that subject, and took precautions to guard the interests of their clients against the latter contingency. The children of a person have an undoubted right to coin-plain if their father disposes of his property to the prejudice of their legal rights by gratuitous dispositions in favor of parties having less claims upon him than they have, and, should he do so, they have an undoubted right after his death to assert their claims. Creditors of a person have also a right to complain under proper conditions of the transfer of his property, by gratuitous disposition, to the prejudice of their legal rights.
There must exist an exceptional condition of affairs which would cause the claims of creditors to be primed by those of heirs. We do not think such a condition of affairs existed in this ease at the time the act purporting to be an act of donation was executed, and at the time the two acts of mortgage were granted. At that time the children had no vested right whatever to the property. Their rights touching the same were purely future, contingent, and possible. The claims of the creditors, on the contrary, were then actually existing, and all his property was then the pledge of his creditors. The property, so far as the children were concerned, could be legally made available for the payment of existing debts of the father, and, if this was in *523 point of fact done, the children had no ground for complaint. It would be subordinating substance to form to permit them to recover property which followed as to its actual destination and application the course which the law made it right and proper for it to have then taken. The situation by reason of which alone their ground of complaint could arise was that third parties having claims legally subordinate to their own should have been benefited by gratuities to them. That was not the case here. Mrs. Durham was not benefited a dollar by this property. It became affected by mortgage, before the father’s death, in favor of parties holding just claims against him, and the entire proceeds of the property went to them. There was no partiality shown by their father to the parties having rights and claims inferior to their own; no avoidance by him of his duty as a parent. It is by no means certain that the mortgage- creditors could not themselves have had the act of donation set aside, and tne actual facts developed, had not the precise course been followed which was taken. These creditors of the father having acquir ed before his death fixed rights upon the property, their rights were not lost by the mere fact of their debtor’s death. When the. debtor died the creditors were already in a secured position. We have had occasion a number of times to refer to the frequency with which men place the legal title of their property in the names of third parties from different motives, and for different purposes, through acts whose recitals are not sustained by the actual facts of the case, and shown by authorities that these acts are not only not necessarily null absolutely, but not even voidable, if no law has been transgressed thereby, and the purpose in view was a legitimate one.
One of the objects most frequently sought to be thus obtained is to give another the very widest powers of agency by placing the title of immovable property in his name, thereby clothing him with all the rights which result from the indicia of absolute ownership. The latest expression on that subject is found in the case of Nuss v. Nuss (recently decided) 36 South. 345.[1] The facts of that ease resemble the present one to a very considerable extent. Nuss placed the legal title of certain property in the name of a sister-in-law, through an act in the form of a sale. No sale was intended to be made between the parties, but the object of the act was to place the apparent vendee in a position to transfer later the property to his own wife as a dation en paiement from him to her.
The sister-in-law subsequently made the transfer 'which had been contemplated, Nuss himself signing the same. We gave to the whole proceeding, in spite of the shape it had taken, the force and effect of a direct transfer from Nuss to his wife, and that is the position here. In spite of the mere form the matter took, the proceeding must be taken and held as if Durham had made and granted a mortgage through his mother, acting for and on his behalf, and as if his own property had been mortgaged to his creditors Cawthon and Alcocke on the property.
The enforcement of the mortgage by Gordon through a judicial sale carried the title and ownership of the property to Alcocke, and, even if any rights did or could have accrued to the children, it would not have been an interest in the property itself. The Tessier opinion referred to by the district judge differs in its facts from the one now before us. Among other differing features, the property in the Tessier Case went back, it is true, to the original donor, but only in return for an outgoing equivalent amount. Reference is made in briefs of counsel to expressions used by this court in Woolverton v. Stevenson, 52 La. Ann. 1147, 27 South. 674, and Grasser v. Blank, 110 La. 493, 34 South. 648. *525 Counsel were correct in saying they were obiter dicta.
For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and plaintiff’s demand is dismissed, with costs in both courts.
LAND, J., recused, having presided in the court below.

 112 La. 265.