JAMES W. STEWART, SR., and ADEL STEWART, his wife, *Appellants*, vs. C. L. GAINES Appellee.

137 So. 794.
138 So. 476.
Opinion filed June 2, 1931.
Opinion on Rehearing filed October 26, 1931.

Opinion on Rehearing filed December 7, 1931.

270

L. E. Wade, of Green Cove Springs, for Appellants;
E. J. L'Engle and J. W. Shands, of Jacksonville, for Appellee.

Per Curiam.—In this cause Mr. Justice Whitfield, Mr. Justice Ellis and Mr. Justice Terrell are of opinion that the decree of the Circuit Court should be affirmed, while Mr. Chief Justice Buford, Mr. Justice Brown and Mr. Justice Davis are of opinion that the decree should be reversed. When the members of the Supreme Court are sitting six members in a body and after full consultation, it appears that the members of the court are permanently and equally divided in opinion as to whether the decree should be af-

firmed or reversed, and there is no prospect of an immediate change in the personnel of the court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 South. Rep. 51, that the decree of the Circuit Court in this cause be and the same is hereby affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

---

## ON REHEARING.

DAVIS, J.—C. L. Gaines, the appellee, was complainant in the court below and was the owner and holder of a mortgage on lands in Clay County, Florida, given by T. C. Gilbert and Alice J. Gilbert, his wife, to secure the sum of $12,000.00, secured by mortgage dated June 16, 1926, and recorded in the public records of said County on June 18, 1926.

The mortgagors defaulted in the payments provided for by the mortgage, and the complainant filed his bill for foreclosure on October 19, 1927. The defendants named in the bill were the mortgagors, and several other defendants. James Stewart, Sr., and Adel Stewart, his wife, the appellants, were not made parties to that suit.

Thereafter the original cause proceeded to a final decree of foreclosure and sale in favor of the complainant, and the lands covered by such mortgage were sold pursuant to such decree to the complainant on May 7, 1928, for the sum of $10,000.00. This sale was duly confirmed by the Court.

Thereafter the complainant discovered that James Stewart, Sr., and Adel Stewart, his wife, the appellants here, claimed to have some right, title or interest in one of the lots covered by the complainant's mortgage. Upon ascertaining this fact, the complainant in the first foreclosure suit who had bought in the property at the foreclosure sale in that suit, filed his supplemental bill of complaint in this

cause against Stewart and his wife to foreclose the mortgage against the interests claimed by them.

In the trial of this last suit it was established that the defendants, Stewart and wife, claimed an interest in a part of the lands covered by the complainant's mortgage by virtue of a contract to sell one lot included in the lands covered by the complainant's mortgage, which contract had been made by the original mortgagors to Adel J. Stewart under date of November 9, 1926.

This contract was admittedly never recorded in the public records of Clay County, Florida, but it was established beyond question that the vendees in the contract, the Stewarts, entered into the visible, open and notorious possession of the lot covered by this contract and proceeded with the occupancy of a dwelling house erected thereon.

The second foreclosure, based upon the supplemental bill of complaint, was concluded by a sale of the lands held on September 2, 1929, which sale was duly confirmed by the Circuit Court.

The decree and foreclosure sale were affirmed by this Court by an equal division of the Court on June 2, 1931, and a rehearing has been granted as to whether or not the mortgagee, who had already obtained a credit of $10,-000.00 under the first sale, should be allowed to have a foreclosure under the second sale for the full sum of $13,-711.92 realized from the second sale, or whether or not the second foreclosure under the circumstances of this case should have been allowed only for the difference between the amount which had been received under the first foreclosure and the amount of the debt foreclosed.

We have already made reference to the fact that at the time complainant started his foreclosure suit in the first instance the defendants, James W. Stewart, Sr., and Adel Stewart, were in actual, visible, and notorious possession and were occupying a dwelling house situated on one of the sixteen lots embraced in the complainant's mortgage.

This occupancy and possession were under a written contract of sale which had been obtained by the Stewarts from the original owner and mortgagor, although subsequent to the making and recording of the mortgage. The mortgage itself contained a release clause under which any one of the sixteen lots could have been released upon compliance with the conditions of the mortgage and while the mortgagors were not in default. In the decree which is now before the Court the chancellor allowed the complainant in the mortgage foreclosure to completely disregard his first suit and the decree obtained therein insofar as the Stewarts were concerned, and granted a foreclosure of the entire mortgage debt against all of the lands embraced in the mortgage, including the lands claimed by the Stewarts under their contract of sale, and ordered a foreclosure sale to be held embracing the entire sixteen lots and requiring the entire sixteen lots to be redeemed or sold to satisfy the mortgage debt.

In rendering this last foreclosure decree, we are of the opinion that the court below should have ordered a decree against the single lot owned and occupied by the appellants for the difference between the amount which the mortgagee had realized on the sale held under the first foreclosure and the total amount of the mortgage debt, with interest, costs and charges.

This conclusion is based upon the considerations hereinafter mentioned which are peculiar to this particular case and which affect the equities involved here. The mortgagee's mortgage covered sixteen lots of land. This mortgage contained a clause under which any one of the lots could have been sold by the mortgagor and the vendee of the mortgagor could have obtained a release of such lots sold under certain conditions. The conditions under which the release could be obtained were such as might have been strictly insisted upon by the mortgagee, or might have been waived by him. At the time the first foreclosure was

started, the Stewarts were in actual, visible, open, notorious and hostile possession of one lot out of the sixteen covered by the mortgage. This occupancy and possession were under a written contract of sale which the original mortgagor had given to the Stewarts and under which the Stewarts had paid substantial sums of money. This contract was of such nature as to be within the purview of the release clause of the mortgage, although it is not claimed that at the time this contract was given that the mortgagors were not in default.

The possession and occupancy of the Stewarts was such as in law put the mortgagee as much on notice of their claim as if the contract itself had been recorded.

Notwithstanding the fact that the mortgagee was thus put on notice of the claim of the Stewarts under their contract of sale, the mortgagee instituted his first suit to foreclose his mortgage without making the Stewarts a party and without asking, as he might have done, that the mortgage be foreclosed against all sixteen lots including the one lot out of the sixteen which the Stewarts held and occupied.

Under the circumstances, we think that this foreclosure of the mortgage without joining the Stewarts, which was done under such circumstances which charged the mortgagee with knowledge of the claim of the Stewarts by reason of their possession, was equivalent to an election by the mortgagee to first foreclose his mortgage against all other portions of the mortgaged land except the one separate lot claimed by the Stewarts in an endeavor by the mortgagee to realize the mortgage indebtedness.

This foreclosure, however, did not realize all of the mortgage indebtedness, but left a difference between the amount of the first decree and the amount of the sale, which was $3,711.92.

The action of the mortgagee in thus electing to proceed against all of the land except that claimed by the Stewarts in an endeavor to get his money, did not preclude his sub-

sequent foreclosure against the lands of the Stewarts after it was found that the first sale did not bring the full amount of the decree. But, under the circumstances shown by the record, and in view of what we hold to be an election by the complainant which was akin to the marshaling of assets in the manner in which he conducted his foreclosure, we are impelled to hold that the second decree of foreclosure should have been only for the difference between the mortgage debt and the amount which had been realized by the complainant under the first decree of foreclosure from the other portions of the land covered by the mortgage; and that the Stewarts, under the second decree of foreclosure, should have been allowed to redeem their single lot from the mortgage upon paying such difference only.

They should not have been required to redeem from the entire mortgage debt nor buy in all of the other fifteen lots foreclosed against in order to protect their equitable interest in the lot they were occupying under the contract of sale, since they were omitted from the first foreclosure under circumstances amounting to a release of the lot of the Stewarts from all liability except to a lien on their lot for any deficiency.

It is well recognized that the equity of a purchaser of a parcel, as against his grantor, the owner of a tract subject to a lien, rests on the ground that where one who is bound to pay a debt confers on others rights in any portion of the property subject to the lien of the debt, retaining other portions himself, it is unjust that they should be deprived of their rights so long as he has property covered by the lien out of which the debt can be made. Ellis v. Fairbanks, 38 Fla. 257, 21 So. 107, 18 R. C. L. 472; Pomeroy's Eq. Jurisprudence (4th Ed.) Section 1224-1226; 3 Jones on Mortgages (8th Ed.), Section 2085; note 35 A. L. R. 1307.

If it be conceded that the mortgagee, when he started his foreclosure against a part only of all of the lands against which he might have proceeded, was charged with

notice of the claim of the Stewarts to one of the sixteen lots at such time, and notwithstanding such notice, deliberately omitted to make the Stewarts a party to the first foreclosure suit or to ask that the mortgage be foreclosed against all sixteen lots en masse, including the interest of the Stewarts, it will be held that by so proceeding the complainant thereby elected to voluntarily give force and effect to the foregoing equitable principle which is akin to the marshaling of assets and that he was precluded in the second foreclosure from asking for a foreclosure against the Stewarts as to their one lot for any greater amount than the difference between the amount realized under the first foreclosure and the amount of the decree in that suit.

In so holding, we do not mean in anywise to depart from the rule heretofore laid down by this Court to the effect that a complainant who, in a bill to foreclose a mortgage, omits to foreclose such mortgage by his first bill of complaint against one or more defendants who claim to have some right, title or interest in and to the property covered by the mortgage junior to the right, title and interest of the complainant, may file another bill of complaint in chancery, and in the same Court, to foreclose his mortgage against such parties as may have been inadvertently omitted in his first bill of complaint.

Nor do we mean to in anywise depart from the rule heretofore approved by this Court to the effect that the holder of a mortgage or the purchaser at a foreclosure sale may, where the foreclosure proceedings are faulty, void and of no effect foreclose, by action *de novo*, such mortgage against the holders of any junior right, title or interest in and to the mortgaged property. See Oakland Properties Corp. vs. Hogan, 96 Fla. 52, 117 So. 850; Crystal River Lbr. Co. vs. Knight Turpentine Co., 69 Fla. 288, 67 So. 974, Ann. Cas. 1917D, 574; Meyer v. Florida Home Finders, 90 Fla. 128, 105 So. 267; Key West Wharf & Coal Co. v. Porter, 63

Fla. 448, 58 So. 599, Ann. Cas. 1914A, 172; Jordan v. Sayre, 29 Fla. 100, 10 So. 823.

In the case at bar we still adhere to the foregoing rule, but distinguish its application in the present instance and hold it not to be within the rule referred to because in this case there were sixteen separate lots, one of which had been sold to the Stewarts so as to make the Stewarts the equitable owners thereof, and when the mortgagee, with knowledge of this fact, which he was charged with under the circumstances of this case as hereinbefore held, deliberately omitted to make the Stewarts a party to his first suit, this amounted to an election on his part to voluntarily marshal his mortgage security in such way as to foreclose against fifteen of the lots in an attempt to realize the mortgage debt and against the sixteenth for the difference only between what was realized out of the fifteen and the amount of the decree.

The decree of foreclosure should be reversed with directions to enter a decree of foreclosure in the second suit based on the supplemental bill for the difference between the amount of the decree and the amount realized on the first foreclosure sale, and to permit the appellants to redeem the lot claimed by them under their contract of sale on that basis.

It is so ordered.

WHITFIELD, P.J., AND TERRELL, J., concurs.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.

---

### ON PETITION FOR A REHEARING.

PER CURIAM.—A petition for rehearing in this case suggests that the holding of our former opinion in this case is inconsistent with Crystal River Lumber Co. vs. Knight Turpentine Company, 69 Fla. 288, 67 Sou. Rep. 974. It was not so intended and we are unable to perceive wherein the inconsistency lies. We endeavored to make it plain in

our first opinion, and we here again re-affirm and emphasize the fact that our holding here is not intended to have the effect of modifying or overruling any of the previous cases referred to and cited in our former opinion, of which the above cited case is one.

The holding in Crystal River Lumber Company case, supra, is that when for any reason foreclosure proceedings are imperfect, irregular or void, a re-foreclosure may be had by the purchaser at the foreclosure sale against parties holding junior incumbrances who had been omitted as parties to the original foreclosure proceeding under which he bought, and that such right to a re-foreclosure extended to enforcing the mortgage lien against contract rights acquired subsequent to the mortgage, against the holder of such contract rights who, though known to be the holder of such rights, was not made a party to the first foreclosure.

That case involved a ruling on a demurrer only, and in affirming the order of the Circuit Judge overruling the demurrer to the bill of complaint for the second foreclosure, this court distinctly stated that where a subsequent foreclosure is asked for the subsequent foreclosure must be, and can only be had, "upon equitable principles". In this case there is no ruling on a demurrer to the bill involved, but the case is before the Court on an appeal from the final decree which the appellant asserts was not made upon "equitable principles" insofar as it attempts to make him redeem the whole mortgage debt to secure the recognition of his contract rights in one lot only out of a total of sixteen.

In the Crystal River Lumber Company case it was stated in the opinion on rehearing in that case:

"If the Appellant's contract rights in the property were in fact subject to the mortgage, such rights cannot be made superior to the rights growing out of the mortgage by *mere failure* to make the appellant a party to the foreclosure proceedings, *where it is alleged that ap-*

*pellant had ceased operations under its contract rights and it was the belief of all parties that appellants 'would not thereafter make any claim under said contract', no estoppel of appellees appearing."* (Italics ours).

·"If a foreclosure proceeding is not complete it can be made complete by appropriate proceedings in the absence of controlling equities forbidding it."

The above quoted portion of the opinion in Crystal River Lumber Co. vs. Knight Turpentine Co., supra, should be sufficient to show that the holding of this case is not in conflict with the conclusions there stated.

This case does not involve a "mere" failure to join the Stewarts as parties to the first foreclosure, nor does it appear that the Stewarts had "ceased operations under their contract rights", nor that complainant in this case was justified in believing that the Stewarts "would not thereafter make any claim under" their contract. So the elements of the other case which largely controlled the decision of that case on a demurrer to the bill, and not on final hearing, where all the equities and countervailing considerations were before the Court for the making of an *appropriate* decree to do justice in the case are absent from the record here.

In this case the foreclosure was good as to every party having an interest except the Stewarts. The interest of the Stewarts exists in only one lot out of sixteen, and that interest is an equitable one under their contract of purchase from the mortgagor. Insofar as the mortgagor is concerned, his rights have been foreclosed, and the complainant in this case has acquired them by his purchase at the foreclosure sale, including the contract rights of the mortgagor against the Stewarts which have arisen out of the subject matter of the mortgage.

We have held here that "upon equitable principles" taking into consideration the rights of the Stewarts in the one lot which they not only had a contract on, but occupied and possessed under a claim that their contract rights were

to the extent of such rights superior to the mortgage, when the first foreclosure was started, whether their claim to that effect was good or bad or not, the complainant, by starting such foreclosure and concluding it without joining the Stewarts as parties, in the face of such facts, has in effect waived his right to a re-foreclosure of his mortgage against the Stewarts *for any greater amount* than the difference between the mortgage debt embraced in the decree and the amount which the first foreclosure sale produced.

Where a subsequent foreclosure is asked for in a case like this, it must be granted upon "equitable principles". These equitable principles contemplate the making of decrees where possible, that will secure the mortgagee his full mortgage debt, and which will not unnecessarily divest upon such subsequent foreclosure equitable rights of others who were omitted from the first foreclosure, except to the extent of giving the mortgagee his just dues. This is true, even though the first foreclosure could have been had absolutely against the omitted parties had they been joined.

The rehearing petition is denied.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.