By the Court, Barbour, J.
In considering the question before us, we may assume, at the outset, that the corporation of the city of New York is subject to precisely the same legal liabilities as any other corporation or individual would be, in a case of like character with this, unless specially exempted therefrom by some statute; and I find no such statutory exemption.
Although the comptroller was not expressly empowered by an ordinance of the common council to execute the last lease, the remaining in possession, with the payment of the rent by the defendants during and for the entire term covered by such lease, was probably a ratification of that act of their officer. (Story on Agency, § 253, et seq. and notes.) It is not necessary, however, to consume a moment upon that question; for even if such second lease was invalid, the execution of the first lease, for two years, at least, of the period covered by it, was authorized and directed by ordinance; and the entry of the defendants thereunder, and their continued possession, with the payment of the rent of the premises, constituted sufficient evidence to establish the fact that they thus acquiesced in and ratified the contract so made by their agent and officer, in so far as the same exceeded the authority which they had expressly conferred upon him. (See Story on Agency, §§ 253 to 260, and cases there cited; 1 Livermore on Agency, 50; Chitty on Bills, 32, and Am. n. 1.)
*260 Simply, then, the case is this: The defendants entered under a written lease, and remained in possession, from year to year, after the expiration of that lease in May, 1861, until the first of May, 1863, with the assent of the plaintiff, and, with like assent, continued to occupy the premises for, at least, a week after the" last mentioned date. It may also be added that the defendants do not pretend that any notice whatever was given by them to the plaintiff, prior to the 2d of May, 1863; and, in point of fact, no notice was ever given to him by them, or by any one on their behalf, that the corporation would not continue to occupy the premises during the whole of the year ending May 1, 1864, nor had he any réason to suppose they designed to relinquish the possession before that time. It is true that the street commissioner informed the plaintiff, on the second of May, that the street department would vacate the apartments on the ninth; but as the comptroller had not been directed to lease the premises for the street department, and, so far as appears, had not, in fact, done so, the notice so given by the commissioner d.id not even tend to inform the owner. that the defendants would not continue to occupy the rooms by some of their departments or officers, as they had a right to do, during the entire year upon which they had then entered. So, too, and for the same reason, the resolution of the common ■council directing the leasing of the Broadway'bank building for the use of the street department, gave no notice to the plaintiff of an intention on the part of the defendants to abandon the possession of the premises. It merely informed him, if he saw it after it "took effect, that they would not be occupied by the street department; even if it can be inferred from the resolution that such department was not to occupy its old as well as the new rooms. Indeed, the absence of a. provision in that resolution directing the comptroller to terminate the .occupancy of these premises, *261 might well have induced the plaintiff to believe the common council designed to continue such possession. It is sufficient, however, to say that the defendants held over and remained in possession of the premises, with the assent of the owner, after the expiration of their term; that constituted a tenancy from year to year, and rendered the defendants liable for the rent up to the 1st of May, 1864. (See 1 R. S. 744, § 1; Doe v. Bell, 5 T. R. 472; Abeel v. Radcliff, 15 John. 505; Evertson v. Sawyer, 2 Wend. 507; Bradley v. Covel, 4 Cowen, 349; Osgood v. Dewey, 13 John. 240; Conway v. Starkweather, 1 Denio, 113.)
It is no valid excuse for the holding over to say that the defendants were engaged in removing their goods, and consumed no more time in such removal than was necessary for that purpose. Without enlarging upon the evils to which incoming tenants, as well as landlords, would be subjected by a rule of law that should permit such holding over, it is enough to say that no such rule exists in this state; but, on the contrary, the statute provides, in effect, that, in case a tenant shall continue in possession a single hour after the expiration of his term, the landlord may eject him and his goods by a prompt and summary proceeding. (2 R. S. 513, § 28, et seq.)
The learned justice erred, therefore, in holding that the defendants were not liable for the rent of the premises, as fixed by the lease, for the year ending May 1, 1864.
We are also of opinion that the court erred in excluding the evidence offered by the plaintiff to establish the fact that the premises were injured by the defendants or their employees while in possession. The claim of the plaintiff does not depend, alone, upon the covenant in the lease, but rests, also, and independently, upon his common law right to recover, as for waste, such damages as he has sustained by reason of the injury done to his building by the defendants, through their officers or employees in the street department in fitting the same for their own use, while *262 occupying the premises. There can be no good reason why the defendants are any less liable for such injuries than a bank, an insurance company, or an individual tenant would be.
The judgment should be reversed, with costs, and a new trial granted.
Garvin and Jones, JJ. concurred.