Tessier vs. Roussel.

No. 10,292.

JEAN TESSIER VS. OCTAVE ROUSSEL.

1. Donations *inter vivos* are subject to an implied resolutory condition to the effect that if, at the death of the donor, the donation shall prove to be in excess of the disposable portion as then ascertained, the donation will then be resolved to the extent of such excess.

2. The effect of the accomplishment of this resolutory condition retroacts to the date of the donation, and the forced heir revendicates the property regardless of subsequent alienations by the donee and free from all mortgages or incumbrances placed on it by the donee or his assigns.

3. The right to enforce this condition belongs to the forced heirs alone; and is personal to them, derived, not from the deceased, but directly from the law.

4. In exercising this faculty of revendication the forced heir acts in his own right, and if he has accepted the succession of the deceased with benefit of inventory, he cannot be opposed by an exception founded on a right against the succession of the deceased. Hence he is not bound or estopped by obligations of warranty, which the deceased may have incurred, subsequently to the donation, towards purchasers of the property unduly donated.

5. A person who has agreed to purchase from a third possessor property which has been thus donated, while the donor is yet living and having legitimate descendants and presumptive forced heirs, would be liable to eviction by the latter at the death of the donor under the conditions stated, and cannot be compelled to accept so perilous a title.

6. Other special contentions of plaintiff considered and overruled.

7. Distinction between the warranty of convention sales and that arising under judicial sales referred to.

APPEAL from the Twenty-second District Court, Parish of St. James. Duffel, J.

Sims & Poché for Plaintiff and Appellant:

1. Guedry, Jr., donated a tract of land to Guedry, Sr., in 1873; in 1881 Guedry, Sr., mortgaged the property to secure payment of a debt of $12,000 acknowledged to be due by him to the donor and another; in 1883 the donor sued out executory process against the mortgageor (donee) and the property brought at judicial sale $18,000, one-half of which, or $9000, enured to the donor and was received by him. In 1883 the original donor purchased the same property, jointly with others, from the adjudicatee at the sheriff's sale provoked by him, gave his solidary obligation for entire credit portion of the price — about $16,000 — and joined in granting special mortgage and vendor's privilege on the whole property. Guedry, Jr., with co-owners, remained in possession, as owner, until 1887, when, under

| 41 | 474 |
| 44 | 1109 |
| 44 | 1110 |
| 41 | 474 |
| 46 | 817 |
| 41 | 474 |
| 47 | 733 |
| 41 | 474 |
| 50 | 388 |
| 51 | 807 |
| 41 | 474 |
| 152 | 251 |
| 41 | 474 |
| 105 | 559 |
| 41 | 474 |
| 110 | 354 |
| 41 | 474 |
| f119 | 684 |
| f119 | 685 |
| f119 | 691 |
| 41 | 474 |
| 124 | 12 |

Tessier vs. Roussel.

foreclosure against him and co-purchasers, plaintiff, Jean Tessier, became adjudicatee for $6000, leaving $10,000 due by Guidry, Jr., on purchase price, exclusive of interest. Defendant, Roussel, agreed to buy from Tessier, but refused to accept sale on the ground that the donation from Guidry, Jr., to Guidry, Sr., in 1873, vitiated the title. Tessier's contention is that the subsequent acts of donor and donee, mutually concurring, have avoided the original donation and entirely destroyed its effect, so as to place it beyond the reach of any eventual demand or claim of the beneficiary heirs of Guidry, Jr., for a reduction to satisfy their legitime. And he seeks to enforce a specific performance.

2. Guidry, Jr., is clearly bound to warrant and forever defend Tessier's title. His heirs, whether beneficiary or pure and simple, are in like manner bound. The maxim: "*Quem de evictione tenet actio, eundem agentem repellit exceptio*" is applicative to both equally. Pothier, Contrat de Vente, Vol. 3, No. 166, p. 104, No. 176, p. 111; Troplong, Vol. 1 (de la Vente), No. 446, p. 565; Marcadé, Vol. 6, p. 272 and 275; ibid p. 265; 9 Rob. 3; 9 Ann. 242; 13 Ann. 213; C. C. Arts. 2008, 871, 2114, 1054, 1058, 885, 945.

3. The obligations incurred by Guidry, Jr., in accepting the mortgage in 1881, in procuring its sale in 1883, in purchasing in 1883 and consenting to the judicial sale in 1887, are solidary and indivisible — they embrace the whole property. Duranton, p. 297, No. 278; 9 Rob. 3; 9 Ann. 242; 13 Ann. 213.

4. The donor and donee had an undoubted right to engraft on the donation any onerous conditions which might have been inserted in the original act. The donor might have imposed the onerous conditions that the donee should pay him and Valmont Guidry $12,000 in 1882; the mortgage for that amount was tantamount to and in effect the imposition of that onerous condition in the act of donation. It was a perfectly legal act. C. C. 1527, 1526, 1523.

5. The situation is precisely as if no donation had ever been made. A mortgage by Guidry, Sr., on the property of Guidry, Jr., with the concurrence of the latter, to secure a debt due Valmont Guidry would have been indisputably legal, and the sale of the property under the mortgage to satisfy Valmont's claim would have been sufficient to alienate it beyond the possibility or hope of recall. This is the legal effect of what was done.

6. There is no law or authority, so far as we have been able to discover after diligent investigation, to warrant the assumption that property donated gratuitously becomes absolutely "*hors de commerce*" or inalienable by and through the donor himself. The right to stipulate the conventional return and to impose all conditions not contrary to good morals, utterly explodes so flagrant a heresy.

Tessier holds through Guedry, Sr., by legal transfers subsequent to the act of donation; his title is good and ought to be so declared by this court.

---

*T. J. Semmes & Legendre* and *St. Maurice Bérault* for Defendant and Appellee:

1. Effect of the benefit of inventory. R. C. C. 1054, 1032, 1058, 2008, 1020, 1011, 1013, 3526, 2161, No. 4, 1423; Mourlon, Repetititions, vol. 2d, pp. 147-8-9, Nos. 289 to 294, Paris Edition of 1881; Garnier Frères; Marcadé, vol. 3d, pp. 178-9, Nos. 255-6-7. Paris ed., 1859.

2. Beneficiary heir does not represent the person of the deceased. Article 945 applies only to the unconditional heir. 2d Mourlon, p. 147, No. 289, *et sequentes;* 3d Marcadé, pp. 178-9-180, Nos. 255-6-7; Cox vs. Martin, 12 M. 364.

3. Beneficiary heir, *quoad* claims, in his own right, is not estopped by the warranty of the deceased. R. C. C. 1054; Marcadé, ibid.; Mourlon, ibid.; Pothier, Vente, No. 174; Cushing's Translation, p. 108, No. 175.

The maxim, *quem de eviction*, etc., does not apply to beneficiary heirs. The case of Smith vs. Elliott, 9 R. p. 3, and others cited by plaintiff, apply only to unconditional heirs.

4.  No warranty in forced sales on execution, simply reimbursement of price, none in dona-
    tions.  C. P. 690-4, 711, 712, 714, 715; R. C. C. 2620, 2621, 2537, 2619.

5.  Reduction of donations.  R. C. C. 1502 to 1518.

6.  Only forced heirs can sue for reduction.  R. C. C. 1504; 7 R. 429; 26 Ann. 416; 12 Ann.
    465; 12 R. 552; 3d Marcadé, pp. 474-5, IV, Nos. 586-7-8.

7.  The right to reduce attaches to and follows the immovable (donated), into whatever
    hands it may pass.  R. C C. 1516, 1517, 1518, 1264-5, 1270, 1281; 3d Marcadé, pp. 504 to 509,
    Nos. 620 to 624, bis.

8.  The property reduced is brought back to the succession of the donor, for the sole benefit
    of the children of the donor, as a thing due exclusively to them, and not as an asset of the
    donor's succession, for the benefit of its creditors.  R. C. C. 1504, 1453, 1991, 1235; 7 R.
    429; 12 Ann. 465; 26 Ann. 416; 12 R. 552; 3d Marcadé, pp. 474-5, IV, Nos. 586-7; p. 476,
    Nos. 588-9.

9.  The reduction and return are likened to collation between forced heirs, and subject to the
    same rules.  R. C 1235, 1506, 1516.
    To determine the reduction, the debts are deducted only from the assets of the succession.
    To this balance of assets is fictitiously added the donations.  3d Marcadé, pp, 477-8, No.
    590; p. 474, IV, No. 586.

10. Excessive donations are in violation of a prohibitory and mandatory law.  R. C. C. 1943-
    4-5-8; 3d Marcadé, pp. 504-5, Nos. 620-1.

11. Purely gratuitous donations are taken subject to an implied resolutory condition: i. e,
    the eventual claims of the forced heirs for their legitime by suit for reduction.  R. C. C.
    2045, 2020, 2022, 1502-3, 2026, 1517, 1518.

---

The opinion of the Court was delivered by

FENNER, J.  The facts, which are undisputed, present the following
case :

In 1873, Philomon Guidry, Jr., made a gratuitous donation *inter vivos*
of a tract of land to his father, Philomon Guidry, Sr.

In 1881, Guidry, Sr., being indebted to his two sons, Philomon, Jr.,
(the donor) and Valmont Guidry, gave them a special mortgage on the
same land.

In 1883, Guidry, Jr., and others, holding the notes secured by this
mortgage, judicially foreclosed the same and caused the sale of the
property.

At said sale the property was adjudicated to J. E. Poché for $18,000.

Subsequently Poché re-sold the property to P. Guidry, Jr., Valmont
Guidry and Joseph Guidry, jointly; the first two acquiring five-twelfths
each, and the last, two-twelfths.  The price was $20,000, of which
$3925 was in cash, and the remainder in notes secured by special mort-
gage and vendor's privilege.

In 1887, Jean Tessier, as holder of the last mentioned notes, fore-
closed his mortgage, and at the judicial sale, the property was adjudi-
cated to him, and he is the present owner thereof.

Philomon Guidry, Sr., (the original donee), is now dead and left no estate.

Philomon Guidry, Jr., (the donor), has married and has five minor children.. It is admitted that he is, at this time, insolvent.

In February, 1888, Jean Tessier and Octave Roussel entered into an agreement by which the former agrees to sell, and the latter to buy, the property in question at an agreed price.

On examining the title, Roussel refused to execute the agreement, on the ground that he would be in danger of eviction by reason of the eventual claims of the presumptive forced heirs, the minor children of P. Guidry, Jr., for their reserve or forced portion, which would be entitled to satisfaction out of said property at the death of their father, if he left no other estate adequate to settle their claim.

The present action is brought by Tessier to compel Roussel to accept the title and to perform his agreement to buy.

The question presented is whether the title tendered to Roussel is such as he has the right to require and is bound to accept.

If it be true that, at the death of Philomon Guidry, Jr., his surviving legitimate descendants and forced heirs would have the right to subject this property in the hands of Roussel to the satisfaction of their legitimate or forced portion, and, to the extent necessary for that purpose, to revendicate the property, it is obvious that the title tendered is not one which a purchaser would be obliged to accept.

The law of Louisiana, while recognizing the right of every man to deal with his property as he chooses so far as onerous dispositions are concerned, places certain restrictions on the power of gratuitous disposition, which cannot be disregarded. So far as gratuitous dispositions are concerned, the law divides the estate of every person into two parts, of which one is called the *disposable* portion, of which he may dispose gratuitously according to his pleasure ; the other is called the *reserve* or *forced portion*, of which he is not permitted to dispose gratuitously to the prejudice of his legitimate descendants or ascendants, to whom the law *reserves* it and *forces* the person to leave it, and who are, therefore, called *forced heirs*.

The amount of the reserve or forced portion is determined only at the death of the *de cujus*, at which time it is calculated upon as a mass composed of the extant property found in the succession after deducting debts, and of the property which has been gratuitously disposed of during his life. If the extant property does not suffice to satisfy the reserve thus ascertained, the forced heirs are accorded the remedy of reduction, by which they may revendicate the property donated, in whose-

soever hands it may be found, and subject it, to the extent necessary, to the satisfaction of their claims.

Every donation, however and whenever made, is, therefore, subject to an implied resolutory condition, binding on the parties thereto and their privies, to the effect that if, at the death of the donor, he shall leave forced heirs and the donation shall prove to be in excess of the disposable portion as then ascertained, the donation will then be resolved to the extent of such excess.

The effect of the accomplishment of this condition retro-acts to the date of the donation, and operates its revocation or dissolution *ab initio* to the extent of the excess.

Under the general rule that no one can convey a greater title than he possesses and the maxim : *resoluto jure dantis, resolvitur jus accipientis,* the forced heirs are entitled to exercise their rights upon the property, regardless of subsequent alienations by the donee and free from all mortgages or encumbrances which he or his privies or assigns may have placed upon it. R. C. C. 1493 to 1501 ; 1502 to 1518 ; 2041, 2045, 3301.

The only shield which the law gives to the alienees of the donee against the attack of the forced heirs of the donor is found in the provision of Article 1517, which provides that if the donee be solvent, they shall first discuss his effects before resorting to his alienees.

But the admission in this case that the donee, Philomon Guidry, Sr., has already died, leaving no estate, makes this protection totally ineffectual.

The foregoing *résumé* of elementary principles makes it very clear that at the death of Philomon Guidry, Jr., in his present state of admitted insolvency, his children and forced heirs, if then living, would have the right of revendicating this property in the hands of Roussel, if he should complete his purchase, to the extent necessary to satisfy their claims, unless the application of these principles is barred or overcome by others arising out of the peculiar facts of this case.

We have given very serious consideration to all the grounds on which the learned and ingenious counsel for plaintiff bases his contention that the forced heirs will be forever barred from asserting their rights against this property.

1. He suggests that, by reason of the subsequent dealings between the donor and the donee, there has been, in effect, a " conventional return," which is prescribed by Article 1559 as one of the causes by which donations are revoked or dissolved. It is evident that the " conventional return " referred to in this article is that which had been pre-

Tessier vs. Roussel.

scribed and defined by the prior Articles 1534 and 1535 of the Code, and refers to a stipulation embodied in the donation itself. Hence this cause of revocation has no application whatever.

2. He claims that the effect of those dealings was to operate a conventional rescission of the donation by mutual consent of the donor and donee. We need not discuss what would be the effect of such a conventional rescission of a completely executed donation; because it is clear that none such has taken place in the instant case. After this property was donated, the donor was not disabled from lending money to the donee and from securing it by taking a mortgage upon this, or upon any other property of the donee. The taking of such a mortgage was not a dissolution, but an affirmance, of the donation, under a distinct acknowledgment of the donee's ownership which was the essential prerequisite to his right to mortgage the property. Nor could his pursait of the specific remedy provided by law for the enforcement of his mortgage impress upon the latter any quality which it did not possess at its inception.

3. He claims that the subsequent reacquisition by the donor of the property, even by onerous title and for a full consideration, freed it from any claims of the forced heirs arising from the donation. Without holding that such reacquisition could have such effect, it is sufficient, for the purposes of this case, to say that the donor never reacquired but five-twelfths of the property, and the liability of the remaining seven-twelfths to the pursuit of the heirs would suffice to justify the defendant in refusing the title.

4. We confess ourselves unable to comprehend the process of reasoning by which counsel assimilates the acceptance of a mortgage by the donor upon the property given, to an onerous condition inserted in the donation itself, the non-performance of which, under Article 1567 C. C., would give rise to an action to rescind the donation. An action to rescind this donation on the ground that the donee had failed to pay a debt which he had subsequently created and secured by mortgage on the property, would surely have no foundation to rest on; and it sufficiently suggests the utter untenability of counsel's contention.

5. Finally, it is claimed the obligations of warranty imposed on Philomon Guidry, Jr., as the effect of the judicial sales made in the suits to which he was a party, will forever estop even his forced heirs from assailing the title of the purchasers at said sales. In other words, the claim is that if the forced heirs of Guidry, Jr., should bring their action of reduction against Roussel, the latter could repel it by opposing to them their obligation as heirs of their warrantor to protect him

against eviction, under the maxim : " *Quem de evictione tenet actio, eumdem agentem repellit exceptio.*"

This contention might be sound if the forced heirs should accept the succession of Guidry, Jr., purely and simply, but, by operation of law, minor heirs accept only with benefit of inventory, and major heirs have the privilege of so accepting, which they would undoubtedly exercise in the case anticipated.

The Code expressly declares : " The effect of benefit of inventory is that it gives the heir the advantage : 1. Of being discharged from the debts of the succession by abandoning all the effects to the creditors and legatees ; 2. Of not confounding his own effects with those of the succession." Art. 1054, 1032, 1058.

The effect of such acceptance is to prevent all confusion between the rights and obligations of the succession and those appertaining to the heir.

In the language of Baudry La-Cantinière : " The action which the beneficiary heir brings against a third person *in his own right* cannot be paralyzed by an exception founded on a right against the deceased. Thus the beneficiary heir who revendicates his own property which had been unduly sold by the deceased cannot be repulsed by the maxim, *Quem de evictione,* etc." 2 Baudry La-Cantinière, No. 204 ; 4 Toullier, No. 357 ; Pothier, Vente, No. 175 ; 2 Mourlon, No. 289 ; 3 Marcadé, Nos. 255–6–7.

The same principle undoubtedly applies to the action of reduction brought by the forced heir to revendicate property donated by the deceased in excess of the forced portion.

This right of action is not derived from the deceased. The deceased had no such right. His donation was perfectly binding as to him. Neither he, nor his creditors, nor his simple heirs, nor any person succeeding only to *his* rights, could attack it.

The right of reduction is conferred directly on the forced heirs by the law, as one personal to them, which can be exercised by them alone and solely for their own benefit, so much so that even when the property is revendicated, the creditors of the succession have no claims upon it, but it passes to the forced heirs free from all succession debts and charges. On the other hand, the obligation of warranty is one personal to the deceased, binding on him and on his succession, and like all other obligations, must look for satisfaction to that source alone.

The beneficiary heir is not bound by it beyond the value of the extant succession effects and may discharge himself entirely by simply abandoning the latter to the creditors.

Thus it has been held that where the donee has afterwards sold the thing given to a third person, and the donor has expressly intervened in the act of sale, ratifying it, and expressly promising for himself and his heirs to warrant the purchaser against eviction, such purchaser could not oppose even this express warranty to the forced heirs in their suit for reduction. Cass, Journal du Palais, 1868, p. 934.

We, therefore, conclude that the forced heirs accepting under benefit of inventory, bringing their action of reduction in their own right, would not be estopped or hindered by any warranty of their ancestor which would be an exception founded on an obligation of the latter alone.

This obviates the necessity of examining the marked distinctions between the warranty of conventional sales and that arising under judicial sales. The latter, as regulated by the codes, can hardly be considered as a warranty proper, obligating the vendor to maintain the title of his vendee but simply imparts an obligation to restore so much of the price as has enured to the benefit of the parties to the sale on the equitable doctrine which prohibits them from enriching themselves at the cost of their neighbor. It seems well settled they are not bound beyond the benefit received. Lambeth vs. Mayor, 6 La. 731; Cleary vs. Muny, 5 Rob. 248.

Hence the claim of the evicted purchaser against Guidry, Jr., would resolve itself into a moneyed claim against his succession to be satisfied like other similar debts.

Of course, what we have said above is not intended, nor will it operate, as decisive of rights between the plaintiff and the forced heirs in any case which may hereafter arise between them. Such case may never arise, and, if it should, will stand upon its own bottom and may be varied by any new facts or considerations which may be then presented. The issue here being whether the title tendered is such good and clear title as the defendant is bound to accept, the parties having agreed upon the facts, and the plaintiff having propounded certain pleas of law on the facts agreed, as sustaining the sufficiency of the title, we have been obliged to determine the validity of those pleas for the purpose of this issue merely, following therein the precedents of this court down to a very recent decision. Beer vs. Leonard, 40 Ann.; Valentine vs. Hawley, 37 Ann. 303; Succ. of Dupuy, 33 Ann. 277; Pontchartrain vs. Durel, 6 La. 481; Rousseau vs. Tate, 6 Rob. 471; Freret vs. Meux, 9 Rob. 414.

The defendant is fully justified in refusing a title subject to such danger of eviction.

Judgment affirmed.

[Mr. Justice Poché recuses himself.]

## ON APPLICATION FOR REHEARING.

WATKINS, J. The controversy here presented, and, in our opinion, decided, is whether the title to a certain valuable sugar plantation tendered by the plaintiff, was and is such an one as the defendant was *bound* to accept and can be compelled to take.

The determination of this question involves the consideration of the effect of a gratuitous donation, of an interest in the land, from one Guidry, Junior, to Guidry, Senior, the effect of which plaintiff contends was extinguished by confusion resulting from the donor's re-acquisition of the title, and through whom it passed to him free of its effect.

This application assigns error in our opinion in favor of the defendant, in two particulars.

One is, that we practically held that property was *inalienable* by donation, *quoad* the issue, present and future, of the donor; and that, conceding, *arguendo*, the correctness of such a rule, there are exceptions thereto, as when, by subsequent conveyances of the property, the donor becomes the assignee, or proprietor thereof by a new title, such re-acquisition of the property having the effect of extinguishing by confusion the right of resolution.

Counsel then suggests a case where the donor at his death is the owner, by purchase, of the property which had been theretofore donated by him, and propounds this query: Would his heirs have a right of action against the succession for the resolution of the donation?

We cannot perceive any difference between the situation of the title in the hands of the original donor and that it would occupy in the hands of any other vendee of the donee. For being a purchaser from the donee, or his assign, he necessarily paid a consideration for the property and received a *new* title to it. He then further suggests a case where the donee has first reacquired the property and sold it again, and propounds this query: Would the heirs of the donee be entitled to take the proceeds of the sale, and, also, have the right of resolution?

That they would have the right of resolution, we think, is clear, but, whether they could have the right to take the proceeds of the sale, at the same time—i. e. if they were on hand, in kind, and could be identified—is very much doubted.

But, we take it, that the *succession* of the donor would occupy the

Tessier vs. Roussel.

precise attitude that the *donor* did in life, and the heirs in this case, as in all others, would have the right of determining for themselves whether it was to their interest to accept or reject it. It might be insolvent, burdened with onerous charges, subjected to heavy costs and expenses of administration, and the heirs might find it to their interest to assert their right to the *legitime* in preference to accepting the succession, and, being forced heirs, they can choose which course they will pursue.

If the donor cannot divest himself of his property by gratuitous title, to the prejudice of the *legitime* of his heirs, we fail to perceive how he could eliminate the defect from his title by purchasing it from his donee. And should he have purchased from the donee and died, how could his succession possess any better title than he had while living? It could not.

The Code declares that "immovable property that is brought into the succession through the effect of reduction, *is brought into it without any charge of debts or mortgage created by the donee.*" R. C. C. 1515. (The italics are our own.)

This article furnishes a complete answer to the counsel's interrogatories. Its provisions were under consideration, and enforced in the case of Carroll vs. Cockerham, 38th Annual; see pages 821 and 1822; and the case of Hadden vs. Shepperd, 1 La. 506, therein cited.

The French authorities on this subject are equally clear. They say the right to demand the reduction is personal to the forced heirs, who cannot be, from that standpoint, considered as the representatives of the deceased. In other words, the forced heir is invested, in what concerns his reserve, with a right which is proper to him. Hence he cannot be bound by the acts of his author, which are calculated to affect his *legitime.* Demolombe, t. 19, No. 208; Laurent, t. 12, No. 137.

The approval, or confirmation, during the life of the donor, by his children, of the acts which work prejudice to them, is no estoppel to a suit in reduction, brought by them after the death of the father. Toullier, Vol. 5, No. 163; Troplong, Vol. 2, No. 938; Domalombe, t. 19, No. 229; Laurent, t. 12, No. 163; Aubry & Rau, V. 7, No. 229, Sec. 586.

The right of the heir to have the donated property, brought back into the succession of the *donor*, free from debts and mortgages created by the *donee*, being *personal* to the heir, and not an incident of his being a representative of the deceased, it is altogether unaffected by either the acts of the author, or those of the heir *during the life of the donor*, prejudicial to his *legitime.*

Learned counsel of the applicant submits this proposition, viz :

Suppose Guidry, Sr., had survived Guidry, Jr., and that at the time of the latter's death, the mortgage debt on the donated property due him, had amounted to $12,000. Now, according to the theory of our learned opponents, the. representatives of the beneficiary heirs would proceed first to foreclose the mortgage, cause the property mortgaged to be sold, reduce to possession the amount of the debt, add the same to the mass, in order to ascertain the disposable portion, and that being determined, institute the resolutory action against the *adjudicatee* of the *same property* to recover the amount in excess of the disposable *quantum*. Such proceedings would not be tolerated for a moment in a court of justice.

Certainly not, as our argument has just explained. But counsel is in error in his conclusion that " there could be no possible difference, nor can any reasonable distinction be made between the foreclosure of the mortgage by the donor and his heirs," as we have just cited authority to show.

The other particular in which error is assigned, in our opinion, is that the articles of the Code upon which it is founded do not have any application " to married persons having no children at the time of the donation."

The portion of our opinion referred to, is the following, viz :

" The effect of the accomplishment of this condition retroacts to the date of the donation, and operates its revocation, or dissolution *ab initio*, to the extent of the excess."

On this subject we have the following from the counsel's brief, viz :

" The following are the principal provisions in the Civil Code relating to the disposable portion :

" ' Donations *inter vivos* or *mortis causa* cannot exceed two-thirds of the property, if the disposer, having no children, leave a father, mother, or both.' R. C. C. Art. 1494.

" ' Where there are no legitimate descendants, and in case of the pre- vious decease of the father and mother, donations *inter vivos* and *mortis causa* may be made to the *whole amount of the property* of the disposer, saving the reservation made hereafter.' R. C. C. Art. 1496.

" ' The donation *inter vivos* shall, in no case, divest the donor of all his property ; he must reserve to himself enough for subsistence ; if he does not do it, the donation is null for the whole.' *Ibid.* Art. 1497.

" ' Any disposal of property, whether *inter vivos* or *mortis causa*, exceeding the *quantum* of which a person may legally dispose to the preju-

dice of the forced heirs, *is not null*, but only reducible to that *quantum.*' *Ibid.* Art. 1502.

"'A donation *inter vivos* exceeding the disposable *quantum*, retains all its effects during the life of the donor.' *Ibid.* Art. 1503.

"'The donee restores the fruits of what exceeds the disposable portion only from the day of the *donor's decease*, if the demand of the reduction was made within the year; otherwise from the day of the demand.' *Ibid.* Art. 1515.

"'All of the above written Articles were contained in the Code of 1825, and are reproduced *verbatim* in the Revised Civil Code.'"

The contention of counsel is that under the Code of 1825, the distinct provision was made for donations by persons without children, and that they are embraced in Articles 1556 to 1561, of that Code, inclusive.

Article 1556 provides that "all donations *inter vivos* made by persons having neither children, nor descendants, actually living at the time of the donation * * shall be considered as revoked *up to the disposable portion* by the birth of children of the donor * * *if the child be born since the donation.*" (The italics are ours.)

Counsel's contention is that there was an "open conflict" between these codal provisions, and hence, when, in 1870, the Code was revised, the articles cited were omitted, and that the argument to be deduced therefrom is that a donor, who, at the time, *has no children*, is unrestricted in donations he may make during the period of time he may have no children.

This proposition is readily answered by the terms and provisions of the following Articles of the Revised Civil Code, viz:

"Donations *inter vivos* or *mortis causa* cannot exceed two thirds of the property of the disposer, *if he leaves at his decease, a legitimate child,* etc." Art. 1493.

"Donations *inter vivos* or *mortis causa* cannot exceed two-thirds of the property, if the disposer, having no children, *leave* a father, mother, etc." Art. 1494.

"In the cases prescribed by the last two preceding Articles, the heirs are called *forced heirs*, because the *donor cannot deprive them of the portion of his estate reserved for them by law*, etc." Art. 1495.

All of these Articles, in terms, refer to the time of the donor's *decease*, and to the heirs he shall *leave at his death*, as controling the amount of the donation, and as fixing the *legitime* of the heirs. These provisions are identical with those of Articles 1480, 1481 and 1482 of the Code of 1825. Such being the case, it appears to us, perfectly clear, that Articles 1556

*et seq.* of the latter, were properly dispensed with by the Legislature, and eliminated from the Revised Code. Those we have just recited, therefore, contain, in effect, a similar, if not the same restriction, and fully substantiate and support our opinions.

We have given this question most careful and serious consideration, and it has only served to strengthen and fortify the conclusions reached in our original opinion. In any view that can be taken of it, and whatever might be the conclusion we should reach on the trial of the rights of the heirs, we are thoroughly satisfied that it raises such doubt of the validity of the plaintiff's title, that we do not feel authorized to pronounce it perfect and unquestionable, and compel the defendant to accept it.

Rehearing refused.

Mr. Justice Poché recuses himself.