### BRANT v. TERRILL. †
### No. 4283.

Court of Appeal of Louisiana. Second Circuit.
May 20, 1932.

See, also, 173 La. 735, 138 So. 650.

---

*Rehearing denied June 27, 1932.        † Rehearing denied June 15, 1932.

Dhu Thompson, of Monroe, for appellant.

C. C. Elrod, of Siloam Springs, Ark., and Cahn & Cahn, of New Orleans, for appellee.

DREW, J.

Plaintiff sues defendant on four promissory notes, each for the sum of $500, with 8 per cent. interest thereon from their date until paid, and 10 per cent. additional as attorney's fees, and secured by a special mortgage and vendor's privilege upon 60 acres of land situated in Lincoln parish, La., the recognition of which special mortgage and vendor's privilege and a sale of the property mortgaged for the payment of the debt is prayed for by plaintiff.

The property was sold by plaintiff to defendant on March 6, 1922, for the sum of $2,500, of which $500 was paid in cash, and the purchaser gave his four certain promissory notes, each for the sum of $500, with interest and attorney's fees, as stated above, for the balance of the purchase price, the notes maturing in 1, 2, 3, and 4 years after date. After the maturity of the first note, namely, on June 14, 1923, the debtor paid $250 thereon, and also paid the interest on the first note up to June 14, 1923, stated to be $10.89.

Judgment is prayed for in the above sum, with interest, attorney's fees, and costs; with recognition of the privilege and mortgage and sale of the property to pay the debt in principal, interest, attorney's fees, and costs.

The answer of the defendant admits the averments of the petition, subject to the subsequent averments of the answer. These averments are, substantially, that the land was sold under a warranty title, but that the said title was not a good and valid title, for the reason that defendant's vendor did not have a good and valid title when she sold to defendant, which fact defendant did not know at the time he purchased the land, but found out later; that he accepted the title he holds under in good faith and under the honest belief that it was good and merchantable, and irrevocable at the hands of any other person or persons; that defendant's title is not a good and valid title, for the reason that one of plaintiff's authors in her chain of title, namely, James H. Stocks, donated the land in contest, with other land, to one of his children, and that he donated other lands to two other children at the same time, the three children being all the children he had at the time these donations inter vivos were made, and the same donations all together amounting to 360 acres; that thereafter the wife of said James H. Stocks (mother of the said children) died, and he married a second wife, and by her he had three children, and thereafter died, and several years ago the said James H. Stocks died, leaving his three children minors, and they are yet minors; that at the date of the death of said James H. Stocks he owned only 83 acres of land, and practically nothing else of value, the value per acre of the lands donated being about equal with that of the lands left by him at his death; that in the said donations to his older children he exceeded the disposable portion of his estate as of the date of his death, and his last children, on becoming of age, will have the right to reduce said donations to the disposable portion by having the lands donated collated and returned to the estate of the donor; that the danger of such action in prospect is a disturbance of his possession and title, and had already caused him loss in preventing his sale of the mineral rights on said land at $10 per acre; that he had made demand on plaintiff to perfect his said title, which she had refused to do; that he would have paid his said notes at their maturity, and is still willing to pay them, if plaintiff will protect him in his title and possession.

He prays that plaintiff's demands be rejected, at her costs; and for judgment in reconvention in the sum of $900, and canceling and annulling the sale and returning to him the amounts he has paid on the land, and canceling and erasing the notes sued on.

It is agreed by and between the plaintiff and the defendant herein: That this property on which the notes bear, involved in this suit, was formerly owned by James H. Stocks. That the same James H. Stocks, on or about the year 1898, and prior thereto, was married to his first wife, who was living at the time of the making of the hereinafter mentioned donations. That of his first marriage there were born three children, namely, James O., Mrs. Willie Richardson, née Stocks, and Mrs. Nannie McRae, née Stocks. That on the 9th day of September, 1898, said James H. Stocks donated to his daughter, Mrs. Willie A. Richardson, the W. ½ of N. E. ½ and the N. E. ¼ of N. E. ¼, section 31, township 18 north, range 3 west, 120 acres. That on the 9th day of September, 1898, he also donated to his son, James O. Stocks, the S. E. ¼ of N. E. ¼, section 31, and the W. ½ of N. W. ¼, section 32, township 18 north, range 3 west, containing 120 acres; and on the 15th day of January, 1900, he donated to his other daughter, Miss Nannie Stocks, who is now Mrs. Nannie McRae, the W. ½ of N. E. ¼ and S. E. ½ of N. W. ¼, section 32, township 18 north, range 3 west.

That the property involved in this suit was included in that donated to the son, James O. Stocks. That, subsequent to these donations, the first wife of said James H. Stocks died, and some time thereafter, about 10 years, the said James H. Stocks married a second time, of which marriage there were born three children, namely, John, Ernest, and Margaret Stocks, who are living and

are now minors of the ages 17, 15, and 12 years, respectively; that the second wife and mother of the minors died about the year 1916, and that subsequently, in May, 1923, the said James H. Stocks died, leaving as his sole and only heirs the three children by the first marriage and the three children by his last marriage, who are yet minors. That the date the donations hereinbefore referred to were made, the said James H. Stocks was the owner of approximately 720 acres of land, of which amount he donated, as hereinabove stated, 360 acres to the children of his first marriage; and that at his death he owned, and his estate consisted, of, only 83 acres of land.

It is further agreed that the land belonging to the estate at the time of the death of the said James H. Stocks, and the property which he had previously donated to his three children by the first marriage, was of approximately the same class, kind, and value as the land he owned at the time of his death; that the said James H. Stocks and each of his wives died intestate in Lincoln parish, La., and that the minors have no legally appointed tutor for them, but reside and are domiciled with their half-sister, Mrs. Willie Richardson, in Lincoln parish, La.

James H. Stocks, after the donation, resided on lands adjoining this land which was donated, during his entire life and up until his death. That the said James H. Stocks at his death owned no other property, real or personal, or thing of value, other than the 83 acres of land, and owed no debts that have been presented; that, at the time the donations were made hereinbefore mentioned, the donees were of age; that the land covered by the donations, and also that belonging to the estate of James H. Stocks, is in practically the same condition as at the time the donations were made, with the exception of the improvements placed thereon, and its increased value from approximately $3 per acre at the time of the donation, to its present value, being due to the natural increase in land values in this section; that no succession or legal proceedings have been taken in connection with the estates of James H. Stocks, or either of his wives, nor has there been any accounting or other settlement between the heirs.

The notes sued on were offered in evidence and also the acts of donation above admitted. The only oral testimony offered was that of the defendant, who testified that, when he purchased the land in question, he thought he was getting a good title, and only discovered the alleged defect about 12 months later, when he sold a mineral lease on same for $10 per acre. On examination of the title, the purchaser of the lease refused to take it, and that he called upon plaintiff to perfect his title, which she refused to do, replying that he had a good title.

He further testified that the taxes he had paid on said land since the date of his deed exceeded the revenues received therefrom, and that he would have to pay his attorney three or four hundred dollars for perfecting the title and defending this suit. He further testified that he had at all times been ready and willing to pay the notes due on the land, if plaintiff would perfect his title.

The lower court, in a written opinion, gave judgment for plaintiff, as prayed for, and defendant prosecuted this appeal.

■ In order to determine the légitime, the property alienated must be fictitiously brought back into James H. Stocks' succession, collated, as it were, with the actual mass as forming part of same at the time of his death. In this instance, there are no debts to be deducted, and the disposable quantum is calculated on the 83 acres of land left in the succession at his death, plus the land alienated by donations to the three children of his first marriage. Rev. Civ. Code, art. 1505; Carroll v. Cockerham, 38 La. Ann. 813.

The record is silent on the question of the land owned by James H. Stocks being his separate property, or community property. It does not show when it was acquired, whether before his first marriage or during his first marriage. However, for this opinion it matters not. We will figure the légitime both ways, and neither will avail defendant anything.

It is admitted that the land donated and the land remaining in the succession was of an equal value per acre. No valuation is placed upon it. We will therefore figure in acres, instead of dollars:

No. of acres in succession at death, 83
No. of acres donated to children of
  first marriage, 360

| | |
|---|---|
| Total | 443 |
| To disposable portion (⅓), | 147⅔ |

The disposable portion (147⅔ acres), deducted from the number of acres donated to the children of the first marriage, 360, gives the excess over the disposable portion as 212⅓ acres.

Share of each heir (⅙) is 35.38 plus, acres.
Share of heirs of second
  marriage (3) is 106.16 plus, acres.

If the property belonged to the community of the first marriage, as figured by the lower court, the minor heirs of the second marriage would only be interested in one-half the number of acres alienated, or 180 acres, and the share of each heir (one-sixth), after deducting disposable portion, would be 29.22 acres; and the share of the heirs of the second mar-

riage (three) would be 87.66 acres; that is, the donations encroach upon the légitime of the minor heirs of the second marriage, if treated as the separate property of James H. Stocks, by 106.16 plus acres; and, if treated as community property of the first marriage, by 87.66 acres.

James H. Stocks left six children. Therefore he could only dispose by donation of one-third of his property. Rev. Civ. Code, art. 1493. And since the donations inter vivos exceeded one-third, his forced heirs, or their heirs or assigns, can sue for the reduction of the donations (Rev. Civ. Code, art. 1504).

"Donations inter vivos are subject to an implied resolutory condition to the effect that if, at the death of the donor, the donation shall prove to be in excess of the disposable portion as then ascertained, the donation will then be resolved to the extent of such excess." Tessier v. Roussel, 41 La. Ann. 474, 6 So. 542, 824.

"The effect of the accomplishment of this resolutory condition retroacts to the date of the donation, and the forced heirs revendicate the property regardless of subsequent alienations by the donee, and free from all mortgages or incumbrances placed on it by the donee or his assigns." Tessier v. Roussel, supra.

■ This right is personal to the forced heirs, their heirs or assigns, and is derived from the law and not from the deceased.

Article 1517 of the Revised Civil Code places a condition on the right of the heirs to bring an action of reduction or revendication against a third person. Such action can only be brought after the discussion of the property of the donee or donees. The order of procedure in the discussion of the property of the donees, where there is more than one donation inter vivos, is fixed by article 1508, Revised Civil Code: "When the last donee is insolvent, the heir can, after the previous discussion of his effects, claim from the donee, who precedes the last, his legitime, and so on to the one preceding him."

■■ The donation to J. O. Stocks, under whom the title to the property in dispute was derived, was made on September 9, 1898. Later, on the 15th day of January, 1900, the same donor made a donation of 120 acres of land to Miss Nannie Stocks. So far as this record discloses, ·Miss Nannie Stocks, now McRae, is still the owner of the 120 acres of land. The record also discloses that J. O. Stocks disposed of 100 acres of the 120 acres he acquired by donation, and the remaining 20 acres is still in him. There is no allegation or proof of the insolvency of Miss Nannie Stocks, now McRae, or of J. O. Stocks, and the law applicable, from the record as made up, is that the minor children of the second marriage would first have to discuss the property of Miss Nannie Stocks, now McRae, then

discuss the property of J. O. Stocks, and then the property of Mrs. Willie O. Richardson, before they could sue for revendication of the property held by the defendant herein.

The most favorable view to take of the minors' rights shows them to have the right to reduce the donations by only 106.16 plus acres, which is less than the number of acres originally donated to Miss Nannie Stocks, now McRae, the last donation made by the donor, the father of the minors, who might claim a reduction. If Miss Nannie Stocks, now McRae, had alienated this property, which is not shown by the record, the situation would not be changed, as recourse of the minors would still be against this property.

"If the donee has successfully sold several objects of real estate, liable to the action of revendication, that action must be brought against third persons holding the property, according to the order of their purchases, beginning with the last, and ascending in succession from the last to the first." Revised Civil Code, art. 1518.

By no process of reasoning can we find where the minor children of the second marriage of J. H. Stocks could ever have a cause of action to revendicate the property now held by the defendant herein. Their légitime was not encroached upon by the donation from their father, J. H. Stocks, to J. O. Stocks, but was encroached upon by the later donation from J. H. Stocks to Miss Nannie Stocks McRae. If they should ever desire to sue for revendication or reduction, the property of the last donation is more than sufficient to satisfy their rights, and there is still 20 acres in J. O. Stocks they would have to proceed against, if not enough, before proceeding against the property held by defendant.

Plaintiff relies to some extent on the proposition that, at the time of the donations by J. H. Stocks, he was not married to the mother of the minors, and that the subsequent marriage and birth of children of that marriage could not affect title, as such children could have no eventual right upon the property, and cite Woolverton v. Stevenson, 52 La. Ann. 1147, 27 So. 674, and Grasser v. Blank, 110 La. 493, 34 So. 648, in support of that contention. These two cases hold to the contention of plaintiff, but we think that part of those decisions was unnecessary to a decision of the cases, and the Supreme Court, in a later case, Griffith v. Alcocke, 113 La. 514, 37 So. 47, we think, overruled the statements in those cases relied upon by plaintiff by saying they were obiter dicta.

We therefore find that defendant's fear that he will be disquieted in his possession by acts of the minors on reaching majority (Rev. Civ. Code, art. 2557) is not well founded, and the judgment of the lower court is affirmed, with costs.