FOURNET, Justice.
 

 This suit was instituted by the seven children of the late Philomon Guidry, Jr., who died on September 26, 1931, to reduce a donation inter vivos, which exceeded the disposable portion of his estate, the donation having been made to his father, Philomon Guidry, Sr., prior to deceased’s marriage.
 

 Plaintiffs allege that their father died insolvent and that, therefore, the donated property is the sole item to be taken into consideration in estimating their légitime, and that they are entitled to reduce the excessive donation and to be recognized and put in possession of an undivided two-thirds interest in 'the property, which is in the possession of Etienne Joseph Caire and Jean B. C. Grau
 
 *898
 
 gnard. They further ask for an accounting of revenues and other relief.
 

 Defendants filed an exception of no cause or right of action, which was sustained by the district court, and from that judgment the plaintiffs have appealed.
 

 This suit is predicated upon a decision rendered by the Supreme Court in the case of Tessier v. Roussel, reported in 41 La. Ann. 474, 6 So. 542, 824, 825. The facts in that case, as recited by the court, are as follows:
 

 “The facts, which are undisputed, present tjie following case:
 

 “In 1873 Philemon Guidry, Jr., made a gratuitous donation inter vivos of a tract of land to his father, Philemon Guidry, Sr.
 

 “In 1881 Guidry, Sr., being indebted to his two sons, Philemon, Jr., the donor, and Valmont Guidry, gave them a special mortgage on the same land.
 

 “In 1883 Guidry, Jr., and others, holding the notes secured by this mortgage, judicially foreclosed the same, and caused the sale of the- property.
 

 “At said sale the property was adjudicated to J. E. Poche for $18,000.
 

 “Subsequently Poche resold the property to P. Guidry, Jr., Yalmont Guidry, and Joseph Guidry, jointly; the first two acquiring five-twelfths each, and the last, two-twelfths. The price was $20,000, of which $3,925 was in cash; and the remainder in notes secured by special mortgage and vendor’s privilege.
 

 “In 1887 Jean Tessier, as holder of the last-mentioned notes, foreclosed his mortgage, and at the judicial sale the property was adjudicated to him, and he is the present owner thereof.
 

 . “Philemon Guidry, Sr., the original donee, is now dead, and left no estate.
 

 “Philemon Guidry, Jr., the donor, has married, and has five minor children. It is admitted that he is, at this time, insolvent.
 

 “In February, 1888, Jean Tessier and Octave Roussel entered into an agreement by which the former agreed to sell, and the latter to buy, the property in question at an agreed price.
 

 “On examining the title Roussel refused to execute the agreement, on the ground that he would be in danger of eviction by reason of the eventual claims of the presumptive forced heirs, the minor children of P. Guidry, Jr., for their reserve or forced portion, which would be entitled to satisfaction out of said property, at the death of their father, if he left no other estate adequate to settle their claim.
 

 “The present action is brought by Tessier to compel Roussel to accept the title, and to perform his agreement to buy.”
 

 The court, after fully discussing the question presented, finally said:
 

 “We have given this question most careful and serious consideration, and it has only served to strengthen and fortify the conclusions reached in our original opinion. In any view that can be taken of it, and whatever might be the conclusion we should reach on the trial of the rights of the heirs, we are thoroughly satisfied that it raises such doubt of the validity of the plaintiff’s title that we do not feel authorized to pronounce
 
 *900
 
 it perfect and unquestionable, and compel the defendant to accept it.”
 

 It appears from the record that the defendants, Caire and Graugnard, present owners, purchased this property from the heirs of Jean Tessier, by notarial act passed before Charles J. Theard, notary public, on the 11th day of May, 1898, and in the said act declared:
 

 “That they are well aware that in the suit of Jeán Tessier versus Octave Roussel, reported in the Louisiana Annual reports, volume 41, page 474, the Supreme Court declared that the title to the property now sold was not such as an unwilling purchaser could be compelled to accept, because of the possibility of an eventual claim by the forced heirs of Philomon Guidry, Jr. for their reserve, or forced portion, which they might take out of said property at the death of their father, the said Philomon Guidry, Jr. if he left no estate adequate to settle their claim; — the Supreme Court, however, declining to express an opinion as to the merit of such possible eventual claim, when made if ever made.”
 

 We have carefuliy and seriously considered the authorities submitted by counsel for plaintiffs and defendants and find very few cases in which the question here involved was considered, and we find none where the question was actually determined.
 

 Plaintiffs’ claim is based on the provisions of articles 1493, 1503, 1504, 1516, and 1517 of .the Revised Civil Code:
 

 “1493. Donations inter vivos or mortis causa can not exceed two-thirds of the. property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
 

 “Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.”
 

 “1503. A donation inter vivos, exceeding the disposable quantum, retains all its effect during the life of the donor.”
 

 “1504. On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns ; neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.”
 

 “1516. Immovable property, that is brought into the succession through the effect of reduction, is brought into it without any charge of debts or mortgages created by the donee.”
 

 “1517. The action of reduction or revendication may be brought by the heirs against third persons holding the immovable property, which has been alienated by the donee, in the same manner and order that it may be brought against the donee himself, but after discussion of the property of the donee.”
 

 In the case of Tessier v. Roussel, supra, while the question involved was whether or not the title to the property tendered to Roussel was a valid one, nevertheless all the points involved in th.e case at bar were seriously considered and well and ably analyzed.
 

 
 *902
 
 In the case of Woolverton et al. v. Stevenson et al., 52 La. Ann. 1147, 27 So. 674, the court held, in the well-expressed terms of its syllabus, as follows:
 

 “To warrant the refusal by adjudicatees at a judicial sale to take title, they must show, not a remote and possible, but a substantial and threatening danger. The fact that one of the former links of title was a donation, presents no such danger when it is not shown that the donor was at the time a married man, nor that he has since married and had children.”
 

 In the body of the opinion, however, we find the following expression:
 

 “We do not think that donations made by a man prior to marriage are made subject to reduction at his death, as being beyond the disposable portion of his estate, by the fact that 'he should, after making the donation, have married and died, leaving issue of his marriage.”
 

 In the case of Grasser v. Blank, 110 La. 493, 34 So. 648, the court had for consideration the question of whether or not. the title was one which the defendant could be compelled to accept; it appearing in the chain of title that there was an act claimed by the defendant to be a donation inter vivos subject to the possible reduction by the forced heirs of the donor, in the event of her marriage and the birth of children of that marriage. The court held that the act was one of 'revocation of a donation made to the daughter. But after so holding, we find the court going beyond the record and saying that even though the act had.been a donation, it would not be subject to reduction because it was made before the marriage of the donor, citing Woolverton v. Stevenson, supra.
 

 It is well to note that in reading the decisions above referred to, we find no law or jurisprudence cited in support of the proposition that a donation made by an unmarried person is not subject to reduction after his death by the forced heirs of a later marriage of the donor.
 

 In the case of Griffith v. Alcocke, 113 La. 514, 37 So. 47, 51, the very question involved here was raised, and while the court decided the case adversely to the plaintiff on a different issue, the court affirmatively discarded the expressions in the Wooíverton and the Grasser Cases, above referred to, from consideration by pronouncing all that had been said in those cases regarding this question as expressions obiter dicta. The court said':
 

 “Reference is made in briefs of counsel to expressions used by this court in Woolverton v. Stevenson, 52 La. Ann. 1147, 27 So. 674, and Grasser v. Blank, 110 La. 493, 34 So. 648.
 
 Counsel were correct in saying they were obiter dicta.”
 
 (Italics ours.)
 

 We also find the following pertinent language of this court, at page 522 of 113 La. of its opinion in that case, 37 So. 50:
 

 “The children of a person have an undoubted right to complain if their father disposes of his property to the prejudice of their legal rights by gratuitous dispositions in favor of parties having less claims upon him than they have, and, should he do so, they have. an. undoubted right after his death to assert their claims.”
 

 
 *904
 
 We are of the opinion that this is in line with the specific provisions of Rev. Civ. Code, art. 1493, hereinabove recited, which was substantially copied from the French Code, where the language is as follows:
 

 “Les libéralitiés, soit par acte entre-vifs, soit par testament, ne pourront excéder la moitié des biens, du disposant, s’il ne laisse a son décés qu’un enfant légitime; le tiers, s’il laisse deux enfants; le quart s’il en laisse trois ou un plus grand nombre.” Article 913.
 

 This court had this to say on the subject in the case of Tessier v. Roussel, supra, see 41 La. Ann. page 478, 6 So. 542, 543, 824:
 

 “Every donation, however and whenever made, is therefore subject to an implied resolutory condition, binding on the parties thereto and their privies, to the effect that if, at the death of the donor, he shall leave forced heirs, and the donation shall prove to be in excess of the disposable portion as then ascertained, the donation will then be resolved to the extent of such excess.”
 

 The commentators on the corresponding articles of the Code Napoleon unanimously agree on this point. Troplong, T. 2, No. 784; Coin-Delisle, on article 913; C. N.; Zacharise, Donats. Entre-Vifs, T. 1, P. 242; Guilhon, Donats. Entre-Vifs, T. 1, pp. 188, 288, 242.
 

 Pothier, a recognized commentator or authority on the French Code, said:
 

 “111 est certain que les donations, quoique faites avant la naissance de l’enfant qui demande sa légitime, y sont subjeettes; le devoir naturel nous oblige a, conserver nos biens, non-seulement aux enfants qui nous1 avons déjii. mais encore a ceux qui nous pourrons avoir par la suite.” Donations Entre-Yifs, § 3, art. Y, p. II.
 

 1 Counsel for defendant, in a supplemental brief, contends that Philomon Guidry, Jr., donated his property to his only forced heir, his father, at the time the donation was made, and that his children, born of a subsequent marriage, cannot complain because they were not at the time of the donation his forced heirs. “They were not in esse and in posse.” And defendants’ counsel cite the cases of In re Louisiana Savings Bank, 48 La. Ann. 1428, 20 So. 909; Grasser v. Blank, 110 La. 493, 34 So. 648; and Woolverton v. Stevenson, 52 La. Ann. 1147, 27 So. 674.
 

 The defendants can find no comfort in the expressions of the court in these cases for the reasons hereinabove assigned and, in our opinion, still less in their counsel’s proposition that the plaintiffs, as forced heirs of Philomon Guidry, Jr., were not “in esse or in posse” at the time the alleged donation was executed.
 

 Definition of “posse” — “Possibility; chiefly in the phrase in posse. See below.”
 

 Definition of “in posse” — “Capable of being ; in germ ; said of what may possibly be, as opposed to what is in esse or actual being.” Standard Dictionary, Funk & Wagnall Co.
 

 Definition of “in posse” — “In possibility; not in actual existence; used in contradistinction to in esse.” Bouv. Law Diet. (Rawle’s 3d Rev.) vol. 2, p. 1524.
 

 Definition of “posse” — “Quality or state of being possible.” Webster’s New International Diet.
 

 
 *906
 
 Definition of “possible” — “(Fr. latin:— potis: able, capable, & esse: to be) Capable of being, becoming, or coming to pass * * * Not contrary to the nature of things; neither necessitated nor precluded; free to happen or not * * * contrasted with necessary and impossible.” Webster’s New International Diet.
 

 We cannot reconcile the expressions found in the decisions cited as authorities by counsel for the defendants with the positive and unambiguous language of the articles iof the Revised Civil Code. These articles are to the effect that the disposable portion and the légitime are determined quoad the death of the donor and are fixed by the number of forced heirs he shall leave at his death. The articles of the Code, in dealing with the subject of donations, reduction thereof, légitime, and disposable portion, make no exception for a donation by an unmarried person who subsequently marries and leaves children, as in the ease at bar. Therefore, it appears that the lawmakers took cognizance of the duty and responsibility one owes to his unborn children even if they are mere possibilities.
 

 This whole subject was fully and elaborately discussed and analyzed in the case of Tessier v. Roussel, supra, and the views therein expressed are in accord with our opinion on this question, i. e., that the donation is subject to reduction.
 

 It is our opinion that the petition sets forth a right or cause of action. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be set aside and reversed, that the defendants’ exception be overruled, and that the suit be/ remanded for trial on the merits.
 

 O’NIELL, C. J., concurs, in separate opinion.
 

 ODOM and BRUNOT, JJ., dissent.