O’NIELL, Chief Justice.
 

 This is a suit to compel the defendant to carry out a contract to buy from the plaintiff three certain tracts of land at the price and on the terms stipulated in the contract. The defendant contends that the plaintiff’s title is defective and not merchantable. The trial judge, deciding that the plaintiff’s title was good, gave judgment in his favor. The defendant is appealing from the decision.
 

 The' facts on which the defense is founded are not disputed. Colonel George McC. Derby owned certain fractional interests in the land, consisting of three tracts, having a total area of 55 acres, in the City of New Orleans. On September 7, 1921, Colonel Derby, having three sons and a daughter, executed a notarial act creating a trust for their benefit and transferring the property to the trustees for the use and 'benefit of the four children. It was stated in the deed that the Orleans Anti-Tuberculosis League was then negotiating to buy the property, including Colonel Derby’s interest, for a total price of $280,000; hence it was stipulated in the act creating the trust that if the negotiations with the League should result in the League’s consenting to buy the land at the price stated the trustees were instructed by Colonel Derby to join in the sale to the League, and thereafter to administer the proceeds of the sale for the benefit of Colonel Derby’s four children. Soon after the trust was created the League agreed to buy the property for the price stated, and on January 23, 1922, the sale was made to the League. Colonel Derby and his wife signed the act of sale with the trustees for the purpose of conveying to the League Colonel Derby’s undivided interest in the land. A part of the price for which his interest was sold to
 
 *1063
 
 the League was represented by the League’s promissory notes secured by a mortgage and vendor’s lien on the property. The notes were not paid at maturity and in 1941 the mortgage was foreclosed and the property was adjudicated to George T. Derby, who is the plaintiff in this suit, and who was one of the four beneficiaries of the trust which Colonel Derby created on September 7, 1921. The trust has expired by its own terms. The trustees actually received the portion of the price due to the four beneficiaries of the trust, for the sale of 'their father’s interest in the property, and the trustees administered the proceeds under the terms of the trust. It is admitted by the parties to this suit that the four beneficiaries of the trust received their share of the proceeds of the sale of the property to the Anti-Tuberculosis League; hence it is conceded by the defendant that these beneficiaries, who are now the only presumptive heirs of Colonel Derby and his wife, could not successfully question the validity of the title held by the plaintiff in this suit. The defendant’s only contention in that respect is that it is possible that Colonel Derby might hereafter adopt a child, who might become a forced heir, or that Colonel Derby might become the father of another child; and' that any such forced heir would have a right' of action to sue to reduce the donation made by Colonel Derby to the trustees on September 7, 1921, if the value of his interest in the property should exceed the value of the disposable portion of his estate at the time of his death. The defendants refer to article 1517 of the Civil Code, which provides that a suit by á forced heir to reduce an excessive donation to the disposable portion of the ancestor’s estate may be brought against a third party claiming title directly or indirectly from the donee. It was so decided in-the case of Tessier v. Roussel, 41 La.Ann. 474, 6 So. 542, 824, where the article of the code was referred to as giving to a forced heir such a right of action against a third party holding title from the donee at the time of the death of the donor. In the sequel of that case, Guidry v. Caire, 181 La. 895, 160 So. 622, the right of action referred to in Tessier v. Roussel was actually exercised. The plaintiff in this case relies upon the fact that the donation made by Colonel Derby to the trustees on September 7, 1921, was made on the condition that. the trustees should transfer the title to the Anti-Tuberculosis League if the League should agree so to consummate the negotiations then pending for the purchase of the property, and on the condition that the trustees should administer the proceeds of the sale for the benefit of the three sons and the daughter of Colonel Derby. Hence it is argued that, as the trustees did in fact convey the title to the Anti-Tuberculosis League and did afterwards administer the proceeds and did eventually turn over the proceeds to' the three sons and the daughter of Colonel Derby, the transaction was in reality a sale of the property to the Anti-Tuberculosis League and a donation by Colonel Derby of the price or proceeds to his three sons arid daughter. The argument is well founded. In that connection it must be remembered that Colonel Derby and his wife signed the act of sale to the Anti-Tuberculosis League. The Trustees, in signing the deed, acted as the agents
 
 *1065
 
 for Colonel Derby, and were merely fulfilling the obligations of the trust which he had imposed upon them, to sell his interest in the property to the Anti-Tuberculosis League, and to administer the price or proceeds of the sale for the benefit of his three sons and daughter. His interest in the property did not pass from him to the trustees and from them to the Anti-Tuberculosis League, but passed directly from him to the Anti-Tuberculosis League, not by virtue of a donation but by virtue of a sale by Colonel Derby to the Anti-Tuberculosis League. In this aspect of the transaction the case is like Scudder v. Howe, 44 La.Ann. 1103, 11 So. 824, where Scudder sued to compel Howe to carry out an agreement to buy certain property from Scudder. Howe defended on the ground that Scudder’s title was not marketable because the 'forced heirs of the widow of Charles T. Howard, from whom Scudder had acquired his title, might at her death have a right of action to reduce to the disposable portion of her estate a donation which she had made of the property to a corporation called the Children’s Home of the Protestant Episcopal Church. The facts in that respect were that, after Mrs. Howard had donated the property to the Children’s Home, Scudder negotiated to buy it from the Children’s Home, but was advised that at Mrs. ‘Howard’s death her forced heirs might sue to reduce the donation to.the disposable portion of her estate. Scudder and the Children’s Home, then, with the approval of Mrs. Howard, agreed to have her rescind the donation and sell the property to Scudder, and then to donate the price or proceeds to the Children’s Home. Accordingly the Board of Trustees of the Children’s Home adopted a resolution setting forth the facts and authorizing the treasurer of the Children’s Home to approve and sign an authentic act of rescission of the donation by Mrs.' Howard, on condition that she' would agree to sell the property to Scudder and donate the price or proceeds to the Children’s Home. The agreement was carried out; and the court held, in the suit of Scudder v. Howe, that the forced heirs of Mrs. Howard would not have a right of action to reduce to the disposable portion the donation of the property which she had made to the Children’s Home and which she had after-wards rescinded with the consent of the Children’s Home. It was held that the rescission of the donation of the property restored the status quo and left the value of the estate of Mrs. Howard unimpaired; that her subsequent sale of the property to Scudder did not impair the value of her estate because she received an adequate consideration, partly in cash and partly in mortgage notes given by Scudder; that her donation of the price received, in cash and notes, to the Children’s Home, was what impaired the value of her estate; and hence that any right of action that her forced heirs might have at her death, to reduce the donation, would be applicable only to the donation of the money and mortgage notes to the Children’s Home, and would not affect the title of the property which Howe had agreed to buy from Scudder. Accordingly, in the present case, the title which the Anti-Tuberculosis
 
 *1067
 
 League acquired from Colonel Derby, even through his trustees, and which is now held by the plaintiff, George T. Derby, cannot be affected hereafter by any complaint of any future forced heir of Colonel Derby concerning the donation which he made, through his trustees, to his three sons and daughter, of the cash and money received by the trustees ás his share of the price of the sale of the property to the Anti-Tuberculosis League.
 

 The defendant, in answer to this suit, made the point that Colonel Derby could not make a valid donation of his property without the consent of Mrs. Derby. That point is not urged in the defendants’ brief, and is perhaps abandoned, for there is no merit in it. Mrs. Derby signed the act of sale of the property to the Anti-Tuberculosis League, through an agent or attorney in fact appointed by her, and in the power of attorney, by authentic act, she ratified and confirmed the transaction, and authorized her agent to join in the sale of the property to the Anti-Tuberculosis League. Our finding that the transfer of the property to the Anti-Tuberculosis League was not effected through a donation of the property to the trustees of Colonel Derby, but was effected by virtue of the outright sale by him and Mrs. Derby, and by his trustees acting as his agents, is enough to dispose of any complaint that Mrs. Derby might make that there was a donation of the property without her consent.
 

 The judgment appealed from is affirmed at the cost of the appellant.
 

 ROGERS, J., absent.